[Civ. No. 11814.   Third Dist.   July 28, 1969.]

THE STATE OF CALIFORNIA ex rel. STATE PUBLIC
WORKS BOARD, Plaintiff and Appellant, v. MARY
WHERITY et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, Edmund E. White and J. M. Sanderson, Deputy Attorneys General, for Plaintiff and Appellant.

Lally, Martin & Chidlaw, Thomas W. Martin and J. Michael Brown for Defendants and Respondents.

Rogers, Vizzard & Tallett and John D. Rogers as Amici Curiae on behalf of Defendants and Respondents.

REGAN, J.—Plaintiff State of California appeals from a judgment upon a jury verdict in an action brought by plaintiff to condemn, for use as part of the Capitol Area Plan, a parcel of land in the City of Sacramento.

The parcel is a lot 31½ feet by 80 feet, containing approximately 2,500 square feet, improved with an apartment house with two one-bedroom flats on the ground floor and one two-bedroom flat on the second floor. The area in which the lot is situated is zoned C-3 commercial. Miss Wherity, the defendant, who had actual ownership of the property, testified that she valued her property, land and improvements at $50,000.

Jack Holloway, a real estate broker and appraiser, was called by defendant as an expert valuation witness. He testified that the apartment building was between 50 and 60 years old, but that between 1930 and 1940 it had been extensively remodeled and modernized. The structure was in good physical condition and had an economic age of approximately 30 years. Holloway testified that the building was in a transitional area; the transitional phase was described as one in which the neighborhood area was changing from primarily residential or apartment house usage to commercial. He con-

cluded that the property was not being devoted to its highest and best use in its present status as a two-story apartment building, and that the highest and best use for the property in that area would be for high-density urban uses, such as a high-rise apartment complex, commercial hotel, offices, or combinations thereof. Holloway believed that the site would be put to such uses within 10 years, but for valuation purposes he assumed that the property would be put to its highest and best use in five years. However, he admitted that in order to be utilized for such other uses, the property would have to be assembled with adjacent properties.

By employing the conventional income approach (see Evid. Code, § 819), Holloway concluded that the economic return from rental of the three apartments did not give the owner a reasonable return on the estimated base land value of the property which he ascribed as $30,500. From this he concluded that the property was not being used at its highest and best use.

Holloway arrived at an opinion of value by using a market approach (see Evid. Code, § 816) to establish land value and an income approach[1] to establish "carrier" value.[2] Holloway relied upon 10 sales (which in his opinion were "comparables") to reach an opinion as to land value. Some of these sales were assemblages and were selected because of identical economic pressures and influences as were present in the subject area. He concluded that the land value was $30,500 and the "carrier or income stream value"[3] was $5,000, or a total value of $35,500. The jury returned a verdict for $35,500.

Plaintiff called as its first witness a Mr. Roderick E. Mac-Iver, an employee of and director of special studies for Real Estate Research Corporation, a nationwide firm of urban economists, market analysts and real estate appraisers. Mac-Iver, an economist and not an appraiser, was called to testify as to the highest and best use of the property, but not as to value. The offered testimony was refused by the trial court and forms the basis for this appeal.

---

[1] There are three basic approaches in appraising property: (a) current cost of reproducing property less depreciation (cost); (b) value which property's net earning power will support, based upon a capitalization of net income (income); and, (c) value indicated by recent sales of comparable properties on the market (market data). (See *United States v. Eden Memorial Park Assn.* (9th Cir. 1965) 350 F.2d 933, 935.)

[2] Interim use value as apartment.

[3] Apartment building is the "income carrier."

A Mr. Levering, a realtor and appraiser, was then called by the plaintiff. Levering testified that the property was in good condition for its age. He noted, however, that at the present time C-3 property is a drag on the market, and thus concluded that the highest and best use is for residential for the next 20 years. In ascertaining value, Levering used the comparative sales data and income approaches. He concluded that at the date of valuation the market value of the property was $23,500.

Plaintiff's witness MacIver was admittedly well qualified to render his opinion on the highest and best use.[4] His proposed testimony was offered as part of plaintiff's case in chief in which he would testify to the potential uses to which the property could be devoted. His testimony was also offered as rebuttal to defendants' witness Holloway's testimony that the highest and best use of the property was high-density urban uses. MacIver's testimony on rebuttal would have been limited to the proposition that such high-density urban uses were not feasible. In neither form was MacIver to testify as to the value of the property.[5]

---

[4]His background included conduct of ''a wide range of economic analyses for planning purposes, through urban redevelopments, studies of particular properties, economic feasibility studies of real estate related developments. We do a great deal of real estate appraisal.''

[5]Plaintiff's offer of proof was to the effect that the essence of Mr. MacIver's testimony would be a market analysis of feasible uses of the subject property for office, high-rise apartments, transient housing and retail-commercial uses. It was indicated that Mr. MacIver gave consideration to the following items in determining the feasibility of these uses:

(1) An examination of the dynamics of land utilization and absorption in the general area of downtown Sacramento during the recent past, including consideration of the impact of city development and expansion of local government office buildings.

(2) Analysis of the impact on Sacramento of the existing and proposed redevelopment projects by the Redevelopment Agency of the City of Sacramento.

(3) Projection of the likely future growth of Sacramento with particular attention to the factors expected to influence the demand for downtown properties.

(4) Analysis of the probable effect on downtown activity of changing highway and street patterns and the usefulness of the subject site as compared to alternative downtown locations.

(5) The determination of the demand for land for relevant uses, including office buildings, high-density apartments, transient housing, retail-commercial, and miscellaneous commercial uses in the general area of Sacramento in which the subject property is located.

(6) The analysis of the supply and demand relationship for land uses of the subject parcel and its potential for development in accordance with its highest and best use in the absence of the State Capitol Plan.

Plaintiff's offer of proof specifically offered Mr. MacIver's testimony in two forms. One form was as part of plaintiff's case in chief in which Mr. MacIver would testify to the potential uses to which the subject

The trial court in ruling that such testimony was not admissible in either form, stated:

"And so, therefore, I believe that for these various reasons that I have given, I really think that this is not appropriate testimony to be offered in this eminent domain proceeding, because I feel that this is a basic determination, that is, the highest and best use, which must be made by an appraiser whose opinion has any value before he makes such an appraisal, and if he makes that appraisal, and if he comes in and does it, not only—well obviously, the opinion of someone who limits himself to this tiny or narrow point is of course, surplusage, but secondly, and even more important, unless it is limited by proper admonition and proper instruction, it is inappropriate because of the provisions of Section 813 (b) of the Evidence Code."[6]

[1a] Thus, the single issue presented is whether the trial court erred in not allowing this testimony as to the highest and best use (without opinion of value) to come in either as part of plaintiff's case in chief or on rebuttal.

property could be devoted in terms of his market analysis and he would give his reasons why this was so. Plaintiff's counsel stated that the State's appraisal valuation witness, Mr. Levering, had considered and relied upon Mr. MacIver's study, analysis, conclusions and opinions. However, it was stated to the court that Mr. Levering had reached his own opinion of highest and best use independently.

The second way in which Mr. MacIver's testimony was offered was as rebuttal to defendants' case as presented primarily by the testimony of Mr. Holloway. Mr. Holloway had testified that the highest and best use of the subject properly was "basically high-density urban uses." Mr. Holloway testified that illustrative of such uses were "commercial office building" uses, "combination commercial building" uses, "high-rise apartments" uses, "combination office-apartment building" uses and "buildings for rental to the State of California" uses, among others.

The State's offer of Mr. MacIver's testimony as rebuttal testimony was specifically limited in the rebutting part of the offer of proof to testimony that the highest and best use testified to by Mr. Holloway and the particular uses illustrative of that highest and best use were not feasible. As part of such offer, plaintiff specifically excluded Mr. MacIver's opinion of highest and best use of the subject property.

Defendants' continued objections were that the testimony was immaterial; that the State's value witness, when called to testify, necessarily had to make a determination of highest and best use in order to arrive at his opinion of value of the subject property; that the determination of highest and best use is exclusively within the province of the witness who is to give the opinion of the value.

The court ruled that, because of Evidence Code section 813, such evidence as was offered through Mr. MacIver was not admissible as part of going forward or as rebuttal.

[6]The court expressly rejected the idea that it was excluding the evidence because it was cumulative.

It is clear that the feasibility of particular uses for the subject property as set forth by defendants' witness Holloway was crucial; based upon use analysis, the respective experts differed widely on its basal land value. Contending that section 813, subdivision (b),[7] was never intended to be an exclusionary section, plaintiff thus argues that the feasibility of such uses was not only relevant and proper, but that under the circumstances of the case its exclusion was not only erroneous but prejudicial.

We agree with plaintiff that the excluded testimony of plaintiff's witness MacIver was relevant evidence, tending in reason to prove a disputed fact of consequence to the determination of the action (Evid. Code, § 210), and under the circumstances of the case admissible both on plaintiff's "case in chief" and on rebuttal.

Two cases, decided prior to enactment of the Evidence Code, support plaintiff's position. In *People* v. *Ocean Shore R.R., Inc.* (1948) 32 Cal.2d 406, 425-426 [196 P.2d 570, 6 A.L.R.2d 1179], the court states: "Under section 1249 of the Code of Civil Procedure the measure of compensation for property taken is its market value, which is to be determined by a consideration of all the uses to which it is adapted and for which it is available. [Citations.] In this connection, the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as the measure of value, but to the extent that the prospect of such use affects the market value of the land; however, elements affecting value which, while possible, are not reasonably probable, should be excluded. [Citations.] . . .

"In the present case there seems to be little doubt as to the physical adaptability of the property for railroad use, but

---

[7] Section 813 of the Evidence Code reads: "(a) The value of property may be shown only by the opinions of:

"(1) Witnesses qualified to express such opinions; and

"(2) The owner of the property or property interest being valued.

"(b) Nothing in this section prohibits a view of the property being valued or the admission of any other admissible evidence (including but not limited to evidence as to the nature and condition of the property and, in an eminent domain proceeding, the character of the improvement proposed to be constructed by the plaintiff) for the limited purpose of enabling the court, jury, or referee to understand and weigh the testimony given under subdivision (a); and such evidence, except evidence of the character of the improvement proposed to be constructed by the plaintiff in an eminent domain proceeding, is subject to impeachment and rebuttal."

plaintiff's witnesses were also entitled to consider whether its use for such purposes was economically feasible. Any prospective purchaser, in estimating the value of the property for railroad purposes, would consider the economic feasibility of that use, and it is therefore a factor which has an important bearing on the market value of the property.''

Plaintiff additionally urges that the subject of highest and best use is a proper inquiry upon rebuttal by itself, and that the feasibility of such use in the form of an opinion is proper rebuttal. As stated in *People* v. *Loop* (1954) 127 Cal.App.2d 786, 801-802 [274 P.2d 885] : ''Three experts testified on behalf of plaintiff. Each testified that in his opinion the highest and best use of Lots 52 and 53 was for an office building. After such testimony, and at the close of plaintiff's case on values, defendants called defendant Philip L. Wilson. He has bought and sold real estate in Los Angeles for many years, including property in the vicinity of the property in question. Defendants sought to show by Mr. Wilson that he had plans drawn for an office building and for a garage building to be erected on Lots 52 and 53; that he had made a study of the cost of erecting the two types of buildings on the property; that he had previous experience in operating office buildings and garages; that an office building of the type testified to by the state's experts would net less than 6 per cent, that a garage building would net in excess of 11 per cent on the same valuation; and that the type of building testified to by the state's experts would be economically unfeasible and unprofitable. The state objected to the inquiry on the grounds it was not rebuttal and was 'purely collateral.' The objection was sustained. The ruling was erroneous. Manifestly, the inquiry was proper rebuttal and it was not collateral. The burden of proof as to value and severance damages, and consequently as to the highest and best use of Lots 52 and 53, was on defendants. The state's case with respect thereto was a matter of defense. Evidence of defendants with respect to matters brought out in defense for the first time was rebuttal. It was evidence offered for the purpose of destroying the effect of evidence introduced by plaintiff. The first mention that the highest and best use of the property was for an office building came with the testimony of the state's experts in the presentation of its defense on the question of values. It was entirely proper for defendants to rebut this testimony by showing, if they could, that an office building on the property

would be economically unwise. (Cf. *People* v. *Ocean Shore R.R., Inc.*, 32 Cal.2d 406, 426 [196 P.2d 570, 6 A.L.R.2d 1179].) Mr. Wilson was competent to testify on the subject. (*People* v. *Al. G. Smith Co., Ltd.*, 86 Cal.App.2d 308, 312 [194 P.2d 750].) No objection was made on that ground." (Cf. *People* ex rel. *State Park Com.* v. *Johnson* (1962) 203 Cal.App.2d 712, 715-716 [22 Cal.Rptr. 149].)

Section 351 of the Evidence Code provides: "Except as otherwise provided by statute, all relevant evidence is admissible." In commenting on the enactment of section 351, the California Law Revision Commission states: "Section 351 abolishes all limitations on the admissibility of relevant evidence except those that are based on a statute, including a constitutional provision. See Evidence Code § 230. The Evidence Code contains a number of provisions that exclude relevant evidence either for reasons of public policy or because the evidence is too unreliable to be presented to the trier of fact. See, *e.g.*, Evidence Code § 352 (cumulative, unduly prejudicial, etc. evidence), §§ 900-1070 (privileges), §§ 1100-1156 (extrinsic policies), § 1200 (hearsay). Other codes also contain provisions that may in some cases result in the exclusion of relevant evidence. See, *e.g.*, Civil Code §§ 79.06, 79.09, 227; Code Civ. Proc. § 1747; Educ. Code § 14026; Fin. Code § 8754; Fish & Game Code § 7923; Govt. Code §§ 15619, 18573, 18934, 18952, 20134, 31532; Health & Saf. Code, §§ 211.5, 410; Ins. Code §§ 735, 855, 10381.5; Labor Code § 6319; Penal Code §§ 290, 938.1, 3046, 3107, 11105; Pub. Res. Code § 3234; Rev. & Tax. Code §§ 16563, 19282-19289; Unemp. Ins. Code §§ 1094, 2111, 2714; Vehicle Code §§ 1808, 16005, 20012-20015, 40803, 40804, 40832, 40833; Water Code § 12516; Welf. & Inst. Code §§ 118, 827." Section 813 of the Evidence Code is not one of the exclusionary code sections.

Defendant condemnee adopts the position of the trial court. She contends that since under section 813 "value" may be shown only by qualified experts, including the owner, the witnesses thus cannot go beyond actual valuation testimony, since this would lead to a proliferation of witnesses and prolong the trial. She argues that evidence as to highest and best use is properly presented *only* through valuation witnesses, who of course may properly rely upon other experts' reports and opinions. She further argues that the error here, if any, was not prejudicial, since the plaintiff's valuation witness could

have relied upon MacIver's report, and the verdict returned by the jury was properly within the specified range of $23,000 to $50,000.

Section 813, however, provides in substance no more than that the value of the property in an eminent domain proceeding may be shown only by the opinions of qualified witnesses and by the owner of the property being valued. It contains no statutory limitation on the number of witnesses nor does it bar the admission of any other admissible evidence for the limited purpose of enabling the court, jury or referee to understand and weigh the opinions of the valuation witnesses. Such admissible evidence, ". . . except evidence of the character of the improvement proposed to be constructed by the plaintiff [condemnor] in an eminent domain proceeding *is subject to impeachment and rebuttal.* (Italics added.) (Evid. Code, § 813.) It thus appears that section 813 was not intended to be an exclusionary section, as the trial court viewed it, but rather, that the limitations set forth in the section are to prevent evidence, otherwise admissible, from being used to support a verdict *outside the range of opinion testimony.* Indeed, the section itself expressly contemplates the admission of *any* relevant evidence ". . . for the limited purpose of enabling the [trier of fact] to understand and weigh" the opinions of the valuation witnesses.

It is not our view that independent and separate evidence of feasibility, or of the highest and best use of property will *always* be admissible, at any stage, in the trial of a condemnation action. Although we are of the opinion that the testimony of the witness MacIver is permitted, rather than prohibited, by sections 813 and 351 of the Evidence Code, those sections must be read in the light of section 352 of the same code: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

Section 352 vests in the trial judge sufficient discretion, in a particular case, to limit or reject testimony of the type here excluded. Because of the crucial nature of the controversy over the feasibility of particular uses in the case at bench, however, reasonable minds could hardly differ as to whether it would be an abuse of the discretionary authority

conferred by section 352 to exclude testimony of highest and best use when separated from a consideration of the market value of the property itself. ██ But that question need not here be answered, as the trial judge did not purport to exercise the discretion conferred by section 352. Rather, he clearly and earnestly pointed out that his ruling was predicated upon his interpretation of section 813 and not upon a need or desire to exclude the witness' testimony because of its cumulative or repetitive nature. In our view, his interpretation was erroneous, and the amount of the verdict returned is persuasive evidence of the prejudice resulting from the exclusionary ruling.

The judgment is reversed.

Janes, J., concurred.

FRIEDMAN, Acting P. J.—I dissent. Evidence Code section 813, subdivision (a), declares that the value of property may be shown only by the opinions of qualified experts (or the owner). Thus the proposed economic feasibility testimony of Mr. MacIver was not admissible as direct evidence of value. It was admissible in the trial court's discretion for the limited purpose of helping the jury to weigh the opinions of the valuation witnesses. (Evid. Code, §§ 813, subd. (b), 351, 352, 723; see An Analysis of the California Evidence Code Provisions Relating to Evidence in Eminent Domain and Inverse Condemnation Proceedings (Cont. Ed. Bar 1966) p. 10.)

The majority opinion accepts the premise of the trial court's discretionary power. Then, assuming that exclusion would have been an abuse of discretion, it orders reversal because it interprets an isolated remark of the trial judge as an indication of failure to exercise discretion. An appellate court should review propriety of the action, not the correctness of the trial judge's theory. (3 Witkin, Cal. Procedure (1954) Appeal, § 76.)

The record demonstrates that the trial judge exercised discretion in his ruling. He stated that the MacIver testimony would be inappropriate *unless limited by proper admonitions and instructions*. At other points he stated that the testimony would tend to confuse the jury; that it would lead to a "parade of witnesses"; that it would be "surplusage" to the testimony of the state's own appraiser, who himself would testify to the property's highest and best use. In his ruling the trial judge indicated thorough familiarity with the 1960

report of the California Law Revision Commission which led to the adoption of Evidence Code section 813. (3 Cal. Law Revision Com., Recommendation and Study Relating to Evidence in Eminent Domain Proceedings (1960).) There is no escape from the conclusion that the trial judge knew exactly what he was doing and excluded the proposed evidence in the conscious and knowledgeable exercise of his discretion.

The only question, then, before the appellate court is whether discretion was abused. " ' ' "In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered." ' " *(People* v. *Russel,* 69 Cal. 2d 187, 194 [70 Cal.Rptr. 210, 443 P.2d 794], citing cases.)

An assessment of prospective use involves inquiry into several kinds of feasibility: economic feasibility, sometimes termed ''demand''; engineering or physical feasibility; legal feasibility under future zoning regulations. Highly specialized uses to one side, economic feasibility is well within the ken of the parties' expert appraisal witnesses. (See American Institute of Real Estate Appraisers, Condemnation Appraisal Practice (1961), pp. 31-32.) In many cases—and this appears to be one—the feasibility testimony of an economist may serve only to inflate and bedizen that of the real estate appraiser. Engineering feasibility and future zoning probabilities are frequently outside the expertise of real estate appraisers. *(Ibid.,* pp. 33-34; *People* ex rel. *Dept. of Public Works* v. *Arthofer,* 245 Cal.App.2d 454, 465 [54 Cal.Rptr. 878].) An engineering witness, for example, may be the party's only means of supporting his own or attacking the opposition's appraisal witness. The discretionary factors characterizing each kind of feasibility evidence vary considerably.[1]

We have here an example of economic feasibility testimony. The prospective uses were not particularly specialized or eso-

[1]Neither of the cases cited by the majority is particularly compelling. Both antedated the rather fundamental change created by the 1965 enactment of Evidence Code section 813. *People* v. *Ocean Shore R.R., Inc.,* 32 Cal.2d 406, 425-426 [196 P.2d 570, 6 A.L.R.2d 1179], holds that economic feasibility is a factor bearing on fair market value, not that it must be proved out of the mouth of one expert rather than another. In *People* v. *Loop,* 127 Cal.App.2d 786, 801-802 [274 P.2d 885], the economic feasibility witness was called by the landowner on surrebuttal in order to attack the prospective use described by the condemnor's valuation experts. The feasibility witness thus represented the landowner's only chance to enfeeble the opposition. Here, in contrast, the state had other strings to its bow, in the shape of one or more appraisers who could testify to the same effect as the feasibility witness.

teric, involving a question of high density urban use versus multiple residential use. Without first putting on its appraiser, the state opened its case by calling Mr. MacIver, its economist. Had the trial court wished to armor-plate its ruling, it could have directed the state to call its appraiser first, its economist second. Nevertheless, the state's offer of proof showed that MacIver would testify to multiple residential, not high density urban use, as the highest and best future use and that this testimony would parallel that of the state's own appraisal witness. The trial court did not at all exceed the bounds of reason in refusing to admit the economist as an additional and unnecessary contender in the battle for the minds of the jurors.

In this era of the law explosion no phase of judicial administration is more ripe for reform than eminent domain valuation. Trial judges, lawyers and appraisers are willy-nilly players in a supercharged psychodrama designed to lure 12 mystified citizens into a technical decision transcending their common denominator of capacity and experience. The victor's profit is often less than the public's cost of maintaining the court during the days and weeks of trial. We should not inject an economist as an indispensable actor in this overburdened drama. I would affirm the judgment.

Respondents' petition for a hearing by the Supreme Court was denied September 24, 1969. Burke, J., and Sullivan, J., were of the opinion that the petition should be granted.