[Civ. No. 12135. Third Dist. Mar. 4, 1970]

THE STATE OF CALIFORNIA ex rel. STATE PUBLIC WORKS BOARD, Plaintiff and Appellant, v.
MERILE H. STEVENSON et al., Defendants and Respondents.

## COUNSEL

Thomas C. Lynch, Attorney General, and J. M. Sanderson, Deputy Attorney General, for Plaintiff and Appellant.

Lally, Martin & Chidlaw and William T. Chidlaw for Defendants and Respondents.

## OPINION

**PIERCE, P. J.**—Plaintiff appeals from the judgment entered in this proceeding in eminent domain. The property condemned faces Capitol Park and consists of the west one-half of a city lot improved by a well-built and well-maintained 11-unit apartment building, with nine garages, located on "N" Street between 13th and 14th Streets in Sacramento. Condemnation was for use in connection with the Capitol Master Plan. The case was tried to a jury which awarded the condemnees $137,750. There was no motion for a new trial following judgment.

Plaintiff contends on appeal that: (1) it was error to permit condemnees' counsel to cross-examine plaintiff's expert regarding a factor of value included in the latter's testimony in a previous condemnation proceeding involving nearby property; (2) cross-examination of condemnees' expert was improperly restricted; (3) it was error, in this proceeding involving property zoned R-5, to permit use of certain transactions involving property zoned C-3 as "comparable sales."

Plaintiff's contentions do not require reversal. Specific facts will be discussed under relevant captions, preceded by general observations.

## GENERAL FACTS

All contentions relate to value. Three expert witnesses testified: Mr. Holloway for the condemnees, Mr. Bradford and Mr. Levering for the condemnor. All utilized what has been referred to as the "appraisal trinity." This court in *State of California* ex rel. *State Pub. Wks. Bd.* v. *Covich* (1968) 260 Cal.App.2d 663 [67 Cal.Rptr. 280] hear. den., said at pages 665-666: "This combines three methods or 'approaches' by appraisers to reach the market value of real estate: (1) the current cost of reproducing the property less depreciation from all sources; (2) the 'market data' approach or value indicated by recent sales of comparable properties in the market, and (3) the 'income approach,' or the value which the property's net earning power will support based upon the capitalization of net income. This three-approach means of reaching market value is usually combined. It is stated in American Institute of Real Estate Appraisers, 'The Appraisal of Real Estate' (3d ed.) at page 66: ' . . . In the majority of his assignments, the appraiser utilizes all three approaches. On occasion he may believe the value indication from one approach will be more significant than from the other two, yet he will use all three as a check against each and to test his own judgment.' All three methods have been judicially approved. (*United States* v. *Eden Memorial Park Assn.* (9th Cir. 1965) 350 F.2d 933, 935.)"

Article 2 was added to chapter 1 of division 7 of the Evidence Code of California by the Legislature in 1965 (Stats. 1965, ch. 1151). By its provisions sections 815-820 substantially codify the so-called "trinity" method of the appraisal of real property in a proceeding in eminent domain. Also codified are the standard basic rules and definitions for the determination of value of property being condemned (§§ 810-814, 821, 822).

The values derived by Holloway under the three approaches were $156,800, $139,300 and 135,700 respectively. His final opinion of value, in which the jury concurred, was $137,750.

The values derived by Levering were $103,000, $101,500 and $97,000 respectively; his final opinion of value was $102,000. Bradford stated no value under the "cost of reproduction" approach but derived values $103,668 and $104,220 under the latter two theories and selected $104,000 as his ultimate opinion of market value.

All the appraisers selected the current (apartment house) use as being the highest and best use.

### CROSS-EXAMINATION RE VALUE FACTOR OF NON-SUBJECT PROPERTY

The subject property is located at 1316 N Street. Cater-corner from the

southwest corner of Capitol Park is the "Blue Anchor" building which, recent to the condemnation of the subject property, had been condemned by the state. Levering had been an appraiser and witness for the state in the former condemnation.

Land value estimated from both market comparison and income approaches is sometimes used and is a factor in the cost approach to property appraisal. (Cal. State Board of Equalization, General Appraisal Manual (1966) p. 502). Appraiser Levering, on direct examination, had appraised the land value of the subject property at $8 a square foot. On cross-examination, for purposes of impeachment, it was brought out over objection that Levering at the earlier trial had testified that the bare land value of the "Blue Anchor" property was $16 a square foot.

No contention is made that that cross-examination was not relevant. Plaintiff urges, however, that the cross-examination violated Evidence Code section 822, subdivision (d). The section provides in relevant part: " . . . [T]he following matter is inadmissible as evidence and is not a proper basis for an opinion as to the value of property:

" . . . . . . . . . . . . . . . . . . .

"(d) An opinion as to the value of any property or interest other than that being valued."

No reported cases have been referred to us construing this section. Plaintiff would have us construe "inadmissible in evidence" in the first sentence as being all-encompassing. It would preclude the giving of any opinion by any expert bearing any relation to value whether such relation was indirect and only involved one element among many which are combined by the appraiser to arrive at an opinion of market value of the whole; it would also proscribe cross-examination as well as direct examination.[1] We are convinced, however, that the Legislature had no intention of changing existing law. All of the Evidence Code provisions relating to eminent domain were the work of the California Law Revision Commission, and there is not a

---

[1] In this connection it is interesting to note that the majority of this court in *State of California* v. *Wherity* (1969) 275 Cal.App.2d 241 [79 Cal. Rptr. 591] hear. den., held it to be *reversible error to exclude* testimony by a witness who was not even an appraiser and who was being questioned *on direct examination,* all of whose testimony would have comprised expressions of opinions leading to an opinion as to market value of the whole, such as: "the dynamics of land utilization," "[a]nalsis of the impact . . . of the . . . proposed redevelopment" "[p]rojection of the likely future growth" etc. (*Id.* pp. 244-245, fn. 5.) All of these factors, quite as much as bare land value, combine to enable an appraiser to formulate an opinion of value; they are not in and of themselves an opinion of value.

word in any of that body's reports to indicate either that it was its intent to abolish a rule historically well settled or to emasculate a principle firmly entrenched as a fundamental part of the right of cross-examination. ■ We are convinced that the limit of the intent evinced by section 822, subdivision (d) was to exclude a party who produces an expert appraiser from using his opinion of the value of property X as a whole as a prop in proving the value of the subject property.

Cases antedating the effective date of the Evidence Code have dealt with admissibility of opinion testimony as to value of non-subject property. The determinative factor in all of these cases was the purpose for which the admission of such evidence was sought. Where evidence of a prior inconsistent value opinion is offered to impeach the credibility of the expert valuation witness, such evidence has generally been held admissible. (*San Diego Land etc. Co.* v. *Neale* (1891) 88 Cal. 50, 67 [25 P. 977]; *County of Contra Costa* v. *East Bay Municipal Dist.* (1959) 175 Cal.App.2d 834, 836 [1 Cal. Rptr. 60] hear. den.; *People* ex rel. *Dept. of Pub. Wks.* v. *Murata* (1958) 161 Cal.App.2d 369, 379-380 [326 P.2d 947] hear. den.; see also *Hanton* v. *Pacific Elec. Ry. Co.* (1918) 178 Cal. 616, 619 [174 P. 61]; Witkin, Cal. Evidence (2d ed. 1966) § 447, p. 403; § 499, p. 470; § 1219, p. 1127; § 1255, p. 1158; 3 Wigmore, Evidence (3d ed.) (1940) § 1041, p. 733; also see Evid. Code, § § 351, 780, 1235.) Where the non-subject property opinion evidence has been offered for valuation purposes, ipso facto, it has been held inadmissible. (*Sacramento etc. Drainage Dist.* v. *Jarvis* (1959) 51 Cal.2d 799, 804 [336 P.2d 530] and cases there cited; also see *People* v. *Nahabedian* (1959) 171 Cal.App.2d 302, 309 [340 P.2d 1053].)

To construe and apply section 822, subdivision (d), in the manner urged by plaintiff would effectually deny to condemnees the right to impeach plaintiff's appraisal witnesses.

### RESTRICTION OF PLAINTIFF'S CROSS-EXAMINATION OF CONDEMNEES' EXPERT

Plaintiff sets forth four instances of claimed improper restrictions by the court of plaintiff's cross-examination of condemnees' expert, Holloway. Before discussing each we should note facts not heretofore mentioned. As stated, the second of the three approaches by real estate appraisers in ascertaining market value is the "market data" approach. This may involve a selection of "comparable sales." As is customary when objection is made by one party to the sales selected by the appraiser of the other party the court meets to hear evidence to determine which of the asserted "comparables" will be permitted. At this trial the hearing was prior to the selection

of the jury. (Determination is by the court.) An assemblage of three sales known as the Lovett sales was offered. The properties involved are located on 15th Street in the north half of the block between L and Capitol Avenue on the east side of the street. The property is across the street from the northeast portion of Capitol Park. Plaintiff's objection primarily went to the fact that these properties are zoned "C-3" whereas the subject property is zoned "R-5." To translate those legends by reference to the Zoning Ordinance of the City of Sacramento of which the trial court and this court both take judicial notice (Evid. Code, § 452, subd. (b); § 459, subd. (a)(1)): "R-5" is a "Heavy Density Multiple Family Zone" and "C-3" is a "Central Business District Zone." In both zones apartment houses are permitted and in both zones apartment houses in this case were intended. There was testimony of a probable rezoning of the subject property as "C-3." ▉ The trial court, having taken judicial notice of the zoning ordinance and having received evidence regarding comparability of the two properties, announced its decision to accept the Lovett sales as a "comparable."[2] Condemnees' expert had given testimony regarding the propriety of the Lovett sales as "comparables" and as a part of his testimony had professed a knowledge of "C-3" and "R-5" zoning. Several days later in the trial when plaintiff sought to cross-examine, asking: "Now C-3 zoning allows for different uses—" the court interrupted, stating: " . . . that's a question of law" adding that he would instruct the jury as to any portions of the zoning ordinance requested. Counsel did not pursue the matter, did not even explain his purpose of opening up the subject, and, in fact, seemed to agree with the court that it was an improper subject of cross-examination. It is now contended it was his purpose to test the witness' knowledge of the uses permitted under "C-3" zoning. That was not explained by counsel either by approaching the bench or otherwise. Had it been, no doubt the judge would have permitted interrogation. Sacramento's zoning ordinance is long and complex. Competence of an appraiser to have memorized all of its many classifications would have had little, if any, relevance to the trial. Appraiser Holloway, in any event, had previously in his testimony demonstrated an understanding of uses within the scope of the inquiry permitted by the types of zoning involved and there was no harm to plaintiff's cause in the respect in which it now complains.

▉ The second assertedly improper restriction relates to questioning Mr. Holloway regarding two reports mentioned by him during his qualification as an expert, to-wit: Bank of America, July 1965; Wells Fargo

---

[2]It may be of some interest to note that in *State of California* ex rel. *State Pub. Wks. Bd.* v. *Covich, supra,* 260 Cal.App.2d 663, the two properties were apartment houses much older than the subject property and located a block farther away from Capitol Park. The same Lovett transactions were accepted as comparable sales. The state did not challenge their use.

Business Review. The claimed curtailment of cross-examination was nothing more than a request that counsel frame his questions with some specificity in order to relate them to the geographic area previously delineated as the sole area relevant to the case.

■ Plaintiff next urges error because the court disallowed, on its own motion, examination of condemnees' expert by plaintiff regarding a certain sale in the neighborhood. The judge stated this was not a "comparable sale" which had been listed by either party. The court evidently had in mind that this was an effort by plaintiff to bring in via the "back door" additional market data. (As we have stated, both parties had listed their "comparable sales" at the outset of the trial and evidence had been taken exhaustively as to their relevance.) We may speculate that the cross-examination was for another, and proper, purpose. Again, counsel did not explain his purpose and seemingly agreed with the court that its objection was well taken. Assuming *arguendo,* without holding, that the ruling was error, it was not reversible error. (*People* ex rel. *Dept. of Public Works* v. *Giumarra Vineyards Corp.* (1966) 245 Cal.App.2d 309, 319-320 [53 Cal.Rptr. 902].)

■ Plaintiff, lastly under this caption, contends that it was error to sustain an objection to a question asked Holloway about the cost per unit of the Lovett sales. Since it had already been established that the total Lovett sales price was $164,500 and that there were 42 (proposed) apartment, or condominium, units, this court sees no need why court time should have been consumed to have condemnees' expert perform this arithmetical calculation. Plaintiff argues that, had the question been answered, it could have been established that, under the zoning ordinance, that number of units could not be established on property of the size of the subject property zoned "R-5." The answer to the argument is: the court offered to instruct on the provisions of the zoning ordinance, the mathematical computation could have been performed by plaintiff's counsel and no court ruling precluded him from "painting condemnees' expert into the corner" using all of the data he expected to use—if, indeed, his argument actually possessed the probity now claimed.

### SALE OF PROPERTY ZONED "C-3" AS COMPARABLE TO "R-5" ZONED SUBJECT PROPERTY

The contention argued under this caption is actually another assault on the Lovett sales (as "comparables") from a different flank. Effectually plaintiff argues that to compare differently zoned properties is an "apples-with-oranges" comparison and, therefore, inadmissible. In a proper case the argument obviously could be sound, but that is not necessarily true. Had plaintiff informed this court (or respondents) either in its brief or argument

wherein the anticipated uses of the Lovett property and of the subject property were incompatible the argument could be considered. It cannot be on this record. Indeed, perhaps the contention arises from a misreading of the record. Plaintiff's brief states: "It is submitted that unless there was a probability of rezoning the sales could not be held comparable." ■ Probability of rezoning the subject property had been established at the very outset of the trial.[3] Present use of the subject property and anticipated use of the Lovett property were permissible under both "C-3" and "R-5" zoning. Under the wide discretion wisely permitted a trial judge in ruling upon the selection of "comparables," and the fact it has been held that it is proper for appraisers in proceedings in eminent domain to take into consideration as "comparable sales" property "adjacent to a rapidly expanding county and city government center," (*People* ex rel. *Dept. of Public Works* v. *Donovan* (1962) 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1]), this reviewing court cannot state that the trial court erred in allowing the Lovett sales as "comparables."

The judgment is affirmed.

Friedman, J., and Janes, J., concurred.

---

[3]"Q. Now based upon your investigation and analysis and knowledge of the area of the subject property, and excluding the effect of the Capitol Plan, do you have an opinion as to whether or not there was a reasonable probability of a zoning change to a commercial zone in the subject area? A. Yes. Q. And what is that opinion? A. My opinion is that with the transition area as the history of the area as I have found it, that there would have been a zoning change in the area to meet public demand."