Opinion
DOZIER, P. J.—
The Incident(s)
At about 5 o’clock in the morning on January 1, 1972, Sheriff’s Deputies Dunn and Phillips responded to a call of a family disturbance at 848 South Adelbert Street with the possibility of a gun involved. When the officers arrived, they noticed Manuel Moreno standing on the front porch sobbing.
He did not respond to their questioning so the officers interrogated the residents of the home who had called the police. While this questioning was *Supp. 4 in process, Moreno started to walk away. There is extreme conflict in the evidence as to what then occurred. It is clear that Dunn placed his hand on Moreno to restrain him. The necessity of this action and the manner in which it was done were points in respect to which the witnesses violently disagreed. Whether the officers were brusque, brutal and aggressive or Moreno obstinate, defiant and physically resistant depends on which witnesses are believed. There was also not agreement as to whether the officers-were detaining for questioning or making an arrest or, if both, the moment when the purpose of their action changed.
In any event, Moreno for a considerable period of time struggled with the officers and either struck and kicked'them or attempted to do so. He was finally subdued, handcuffed and placed in the police car.
Moreno was then quiet and peaceable for the next one-half hour during the ride to the jail and while he was being brought to the booking desk. Thereafter, he took offense at the request to remove his wallet and another fight with Dunn, in the presence of the booking desk personnel, occurred.
The Trial
Moreno went to trial only on the charge of a violation of Penal Code section 148, resisting an officer in the discharge of his duty, the Penal Code section 243, battery upon a police officer, having been dismissed.
Counsel for the defendant asked the court to provide a reporter to help preserve a transcript for reference to the jury and for motion for a new trial or appeal purposes. The trial court refused.
During the trial, after the prosecutor presented the evidence of the resisting incident at the' home, he then commenced to present the evidence of the resisting incident at the jail. Defense counsel promptly objected' and, pointing out that only one count of a violation of Penal Code section 148 had been charged, asked that the prosecutor be put to an election as to which incident he intended to rely on. The trial court refused to require this election, permitted evidence on both episodes to be presented to the jury and did not instruct them that they must unanimously agree to guilt on the same incident in order to convict Moreno.
In the course of the testimony at the trial, one Joe Salas, a resident of the house, who had called the officers, testified as to the reason for the officers being called but then was quite evasive and apparently suffered from a selective amnesia when asked what he had observed of the scuffle on the porch. Salas said he gave a statement to an investigating officer, *Supp. 5 Biancalana, but couldn’t remember its content. The prosecutor then put Biancalana on the stand and, over objection, after making an offer of proof to the court, had Biancalana testify by way of impeachment that: “Salas advised me that Manuel Moreno provoked the incident and the police officer did nothing to provoke it.” .
At the close of the testimony and after argument in which the prosecuting attorney was permitted to argue that by virtue of Penal Code section 834a an arrestee has no right to resist an arrest, whether lawful or not, the court gave the usual instructions among which were two crucial ones, to wit:
CALJIC No. 16.100—Resisting Arrest, Penal Code section 148: “Every person who wilfully resists, delays, or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor.
“The phrase ‘in the discharge or attempt to discharge any duty of his office,’ as used in this instruction, includes:
“The making of or the attempt to make a lawful arrest by a peace officer. A Sheriff’s Deputy is a peace officer and as such is a public officer within the meaning of this instruction.”
CALJIC No. 16.103—Resisting Arrest—Use of Reasonable Force —Duty to Submit: “A peace officer who is making a lawful arrest may use reasonable force to make such arrest, or to prevent escape, or to overcome resistance.
“The officer need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested.
“If a person has knowledge, or by the exercise of reasonable care should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force to resist such arrest, whether the arrest is either lawful or unlawful (unless unreasonable or excessive force is being used to make the arrest).”
The Appeal
Counsel for Moreno has set up a barrage of objections to the conviction. Several of these have been adequately answered, but two of them are fatal.
First, the defendant contends that it was a violation of due process and equal protection to deny him, an indigent, a court reporter. People v. Goudeau, 8 Cal.App.3d 275 [87 Cal.Rptr. 424] held that the municipal *Supp. 6 court may constitutionally deny the provision of a court reporter at a misdemeanor trial, if (a) other effective methods of appellate review such as a settled statement are provided, and (b) the trial is not so complex that no appeal is practicable without a transcript.
' In the present case, counsel attempted to distinguish Goudeau on the basis that (1) he asked for the court reporter in advance (2) he demonstrated a specific difficulty that arose because of the inability to read a portion of the testimony back to the jury (3) he demonstrated an interference with appellate rights by the difficulties involved in securing a settled statement and forgetting the detail of some of the testimony justifying an appeal. We believe that defense counsel has demonstrated that there are serious and unfair disadvantages to any defendant both at trial and upon appeal because of the lack of a reporter and that these bear disproportionately upon an indigent who is unable to afford a privately prepared transcript. However, the distinctions from Goudeau are not substantial and this court is constrained to follow this decision not only because we are légally subordinate but also because this is a problem involving a massive expenditure of public funds and a change in policy should properly be made by a court of a higher level.
Second, the defendant contends that the out-of-court statement of Salas should not have been admitted by way of impeachment because (a) there was nothing to impeach as Salas’ testimony had mainly consisted of a string of “I don’t remembers,” and (b) it consisted of an opinion rather than a contrary statement of fact and (c) it was an inadmissible statement of opinion by a lay witness.
Salas’ “I don’t remembers” were the typically evasive, equivocal and apparently mendacious declarations of a witness who has changed his mind. The court was justified in considering them “implied denials” of the testimony of the officers as to Moreno’s behavior on the porch and also implied denials of his stated reasons for calling the officers and complaining to them at the scene and thus to permit his out-of-court statement by way of impeachment (People v. Petersen, 23 Cal.App.3d 883 [100 Cal.Rptr. 590]; People v. Green, 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998]).
It is not material that the out-of-court statement was made in the form of an opinion rather than a simple statement of fact. Wigmore on Evidence discusses the whole subject very well in the 1970 edition at section 1041.
He upholds the obvious logic of permitting the use of an out-of-court opinion statement of a witness where it carries an implied assertion of fact contrary to his testimony in court.
*Supp. 7 A California court has given the same answer in State of Cal. ex rel. State Pub. Wks. Bd. v. Stevenson, 5 Cal.App.3d 60 [84 Cal.Rptr. 742]. In a condemnation case the expert testified as to value of the subject property and supported his opinion by quoting sales prices of certain comparables.
On cross-examination he was asked as to whether or not he had not, out of court earlier, expressed an opinion as to a much higher value for one of the comparables.
Opposing counsel objected by reason of Evidence Code section 822 which states that inadmissible in evidence are opinions as to values of non-subject properties.
The court held that where the purpose is to impeach the credibility of the expert’s testimony his out-of-court opinion evidence, to the contrary, may be introduced.
The statement once admitted may be used for the truth of the matter stated therein (California v. Green, 399 U.S. 149, at p. 161 [26 L.Ed.2d 489 at pp. 498-499, 90 S.Ct. 1930]). It is not material that the statement is out-of-court and hearsay because the declarant was in court available for cross-examination; and in fact, favorable to the defense (California v. Green, supra, 399 U.S. 149).
The fact that the statement was in the form of an opinion that “Moreno provoked the incident” does not make it inadmissible because of the modern trend toward the admissibility of factual conclusions of lay witnesses phrased in the form of opinions.
Modern rule of admissibility of opinions: If the facts cannot be accurately or adequately stated so that the lay witness can only testify to what he knows by giving an opinion it may be admitted.
The modern tendency of the courts is to relax the “necessity test and allow opinions where they are “helpful” in understanding the testimony (Witkin on Evidence, p. 351).
Evidence Code section 800 was amended to read as follows:
“Opinion testimony by lay witness. If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:
“(a) Rationally based on the perception of the witness; and
“(b) Helpful to a clear understanding of his testimony.” (Stats. 1965, ch. 299, § 800.)
*Supp. 8 This permits the introduction of such “opinion” statements by a witness as (a) whether the force of an impact was of such magnitude as to ordinarily jar a passenger from a seat (Healy v. Visalia Ry., 101 Cal. 585 [36 P. 125]); (b) whether an individual acted “peculiarly” or “irrationally”; (c) whether the contestants in an argument were “angry” (People v. Deacon, 117 Cal.App.2d 206 [255 P.2d 98]); (d) whether defendant had “acknowledged” constitutional warnings (People v. Hurlic, 14 Cal.App.3d 122 [92 Cal.Rptr. 55]); (e) whether it looked as if defendant “was trying to break up a fight” (People v. Harris, 270 Cal.App.2d 863 [76 Cal.Rptr. 130]) as a “fight was the kind of occurrence that is recognized as requiring a description by opinion” (People v. Harris, supra, at p. 872).
Similarly in the present case, Salas observed a confrontation between the defendant and the officers. The confrontation lasted over several minutes, in different although proximate locations, and with all participants speaking, arguing, touching one another, and perhaps pushing, grasping or striking one another. In such a situation, permitting an eyewitness to state his observations as to who was precipitating or “provoking" an affray falls squarely within the ambit of Evidence Code section 800 and the cases cited above.
Third, the defendant raises a fundamental objection to his trial in that although informed only of one charge of resisting an officer on January 1, 1972, he was subjected to trial on two separate incidents occurring that day and that the prosecution was not directed to elect upon which incident it was relying, despite defense demand, nor was the jury instructed that in order to convict they must.be unanimous as to at least one of the incidents. Under People v. Castro, 133 Cal. 11 [65 P. 13] and People v. Gavin, 21 Cal.App.3d 408 [98 Cal.Rptr. 518], the foregoing contentions are sound, fundamental and fatal to the conviction unless the two incidents were really part of the “same incident” or “continuous course of conduct” as claimed by the prosecution.
This particular issue is easily resolved by an analysis and comparison of the cases of People v. Jefferson, 123 Cal.App.2d 219 [266 P.2d 564] and People v. Ruiz, 48 Cal.App. 694 [192 P. 327],
In People v. Jefferson, supra,. 123 Cal.App.2d 219, a woman slashed at an officer with her knife on the porch. (1) Ten or fifteen minutes later while (2) other officers were present she slashed him with (3) another knife (4) inside her kitchen.
‘ Despite the four differences between the two slashing incidents outlined above, the court held that the acts formed part of the same transaction and but one offense because they:
*Supp. 9 (a) were only 10 or 15 minutes apart;
(b) occurred in the course of a continuous effort by officers, and the specific officer injured, to disarm her;
(c) the defendant ceased holding and brandishing a knife for just a jew seconds.
The court distinguished People v. Ruiz, supra, 48 Cal.App. 694, where the three acts of attempted intercourse occurred respectively (1) 15 minutes apart (so a total of 30-40 minutes) at (2) locations about one-half mile or more apart and (3) with a witness present on one of the occasions and not the others.
In People v. Ruiz and People v. Castro, supra, the opinions emphasized the unfairness of letting two separate acts or crimes go to the jury on the same count so there is no way to tell whether 12 jurors agreed that the defendant committed any one of them.
The court has Shepardized both Ruiz and Jefferson and finds that they adequately set forth the case law limits in this area, i.e., no case has been found requiring an election by the prosecution where the incidents were less separated than Ruiz or excusing an election where the incidents were further separated than Jefferson.
Accordingly, to resolve the contention in the present case we must just decide whether the factual situation is closer to Jefferson or Ruiz.
Upon this analysis, the question is not even close. The two incidents in question were not only further apart temporally than in Jefferson but even than in Ruiz. In the intervening space of time the defendant had completely calmed down and ceased his criminal activity as he had in Ruiz but not in Jefferson. The second incident occurred several miles away from the first incident and with nearly an entire new set of witnesses present. In this regard, the present case is much closer to Ruiz than Jefferson.
It is the conclusion of the court then that it was error for the trial court not to require an election by the prosecution before the case went to the jury or at least to give an instruction to the jury that 12 of the jurors must unanimously agree as to the commission by the defendant of one oj the acts of resistance and that a finding of guilty could not be based on some of the jurors finding the commission of resistance at the home and others finding the commission of resistance at the jail.
Fourth, the defense contends that the trial court committed an equally serious error in a Penal Code section 148 case in instructing that *Supp. 10 a person being arrested has no right to resist even an unlawful arrest and also in permitting the district attorney to argue this principle set forth in Penal Code section 834a. “834a. Resistance to Arrest: If a person has knowledge, or by the exercise of reasonable care, should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force or any weapon to resist such arrest.”
A close reading of People v. Curtis, 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], reveals the obvious validity of the defense contention. Curtis squarely holds that if the arrest is unlawful there can be no conviction of Penal Code section 148 because the officer is not “in the discharge of his duty.” At pages 354 and 355 the court discusses the effect of Penal Code section 834a and, relying on evidence from the legislative hearings, unequivocally stated that it had no purpose or result of creating a new substantive crime of resisting an unlawful arrest.
It is true that Curtis does further state that if there is also a charge of Penal Code section 243 “Battery Upon a Police Officer” the defendant by reason of Penal Code section 834a can be convicted of simple battery if the arrest is unlawful. But in our present case there was no charge at trial of battery upon a police officer.
It was thus completely irrelevant and erroneous to give an instruction embodying Penal Code section 834a. The damage was compounded by permitting the district attorney to argue in a Penal Code section 148 case that a defendant has no right to resist an unlawful arrest. In a case as close on the facts as the instant one it can hardly be said that the error was not prejudicial. A jury instructed in one breath that resistance to an unlawful arrest is not a violation of Penal Code section 148 and in the next breath that a defendant has no right to “resist” any arrest, lawful or unlawful, could not help being confused. As Moreno was charged with “resisting” arrest some of the jurors may well.have found him guilty because they were instructed that he had no right to resist even an unlawful arrest.
The trap into which the trial court fell was laid by CALJIC California Jury Instructions—Misdemeanor because at page 34 it gives CALJIC No. 16.103 concerning the lack of a right to resist an unlawful arrest as an instruction to be given in a Penal Code section 148 case. Ironically it cites People v. Curtis, supra, as authority!
The CALJIC error is difficult to account for as the misdemeanor jury instructions drawn up by the Municipal Courts Committee Conference of California Judges July, 1970, from which much of CALJIC-—Misdemeanors was derived were prescient and specific in warning judges that *Supp. 11 the principle of Penal Code section 834a should only be instructed where there was a charge of battery in addition to Penal Code section 148. At page 12 these conference instructions havé the following note: “Note: Where there is an additional charge of battery or assault on the police officer, the jury should be told that even where the arrest is illegal, defendant has no right to resist (Penal Code Sec. 834a) and if he does so, he will be guilty of Penal Code Sections 242 or 240 even though he might not be convicted of Penal Code Section 148. People vs. Curtis, 70 A.C. 360 (1969)”
In any event, until People v. Curtis, supra, is laid to rest the trial courts should be warned that it is error to give an instruction based on Penal Code section 834a when the only charge is Penal Code section 148.
Because the last two contentions of the defendant set forth above must be sustained, the conviction of the defendant is reversed.
He will be returned to the trial court for further proceedings in accordance herewith.
Sullivan, J., and Darrah, J., concurred.