[Crim. No. 9422. First Dist., Div. Four. Feb. 2, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRENCE MARK PETERSEN, Defendant and Appellant.

## COUNSEL

R. Corbin Houchins, under appointment by the Court of Appeal, and Stephen D. Bomes for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RATTIGAN, J.**—Count One of an information charged appellant Terrence M. Petersen with possession of an explosive (dynamite) in violation of Health and Safety Code section 12305; Count Two, with reckless possession of the explosive, "in and near a public building and private habitation," in violation of Health and Safety Code section 12304.[1] A jury having found him guilty on both counts, he appeals from the judgment of conviction.

The following facts are not disputed: The explosive in question was found on September 23, 1969, in a ground-level garage which was part of a multiple-building apartment complex in Berkeley. The garage was open and available, for storage purposes, to tenants of the complex. The tenants included appellant, who lived in an apartment above the garage; Frederick M. Connolly; and Arthur J. Roth, who was an Oakland Police Department trainee in September 1969 (and who was an officer thereof at the time of trial).[2]

Called by the People, Roth testified as follows: On September 23, in a driveway near the garage, he engaged in a conversation with Connolly and Saunders. Appellant was not present. In the course of the conversation (which Roth did not quote at this juncture), his attention was directed to the garage. Entering it with Saunders, he looked in a "desk drawer,"[3]

---

[1]At the time of the offenses charged, the cited statutes read as follows:

"12305. Every person not in the lawful possession of an explosive who knowingly has any explosive in his possession is guilty of a felony.

"12304. Every person who does any of the following is guilty of a felony: (a) Recklessly or maliciously has in his possession an explosive on a public street or highway; or near any theater, hall, school, college, church, hotel, other public building, or private habitation; in, on, or near any railway passenger train, or car, cable road or cable car, vessel engaged in carrying passengers, or other public place ordinarily passed by human beings. (b) Recklessly or maliciously uses an explosive to intimidate, terrify, or endanger any human being.

"Any person not in the lawful possession of an explosive who is found with an explosive on his person or in his possession on, in, or near any of the buildings, means of transportation, or places mentioned in this section, is presumably guilty of reckless and malicious possession of the explosive."

[2]All dates hereinafter mentioned refer to the calendar year 1969.

[3]The drawer was not in a desk; it was on a "shelf in the rear of the garage," was uncovered, and presented the appearance of a wooden box open at the top. Photographic evidence indicates that, when the drawer was on the shelf, its top was somewhat below the eye level of a man of average height. Roth explicitly testified that he looked into it, and saw its contents, before the drawer was removed from the shelf. It thus appears that its contents were in the plain sight of a man standing near it at the rear of the garage.

saw several "sticks" labeled "Explosive"[4] and some fuse material, and seized them. He showed the dynamite to Connolly, conversed with him about it (again, Roth did not quote the conversation at this point), and delivered it to the Berkeley police.

As pertinent here, the next prosecution witness was Connolly. He was notably reluctant to testify (he had attempted to avoid service of a subpoena upon him, and appeared in court only after a bench warrant had been issued for his arrest), and it may fairly be stated that his testimony was contradictory in some respects and uniformly evasive, equivocal and dissembling. Under direct examination by the prosecutor, Connolly first testified to the jury as follows: About two or three weeks prior to September 23, he and appellant had been "talking to some people." During that conversation, appellant "threw in something about dynamite or explosives or something in a joking manner." Connolly did not now recall that appellant said it was "his" (appellant's) dynamite or that he "said it was his dynamite that was in the garage."

At this point, and pursuant to Evidence Code section 1235,[5] the prosecutor commenced to lay a foundation for proof of prior inconsistent statements, by Connolly, as to what appellant had said about the dynamite prior to September 23. Connolly first admitted that he had given a signed statement to Inspector Bergfeld, of the Berkeley Police Department, on September 24. In *voir dire* proceedings then conducted before the court alone, and in further testimony to the jury, Connolly testified that his present recollection of the pre-September 23 conversation was "vague" and "very limited." Under both direct and cross-examination, he changed and rechanged his account of the conversation, successively testifying that he could not recall whether it was appellant or someone else who had mentioned dynamite, nor whether appellant had said anything at all at the time; next, that appellant had in fact "mentioned something . . . explosives or dynamite" during the conversation; again, that he (Con-

---

[4]It was immediately stipulated, during this testimony by Roth, that the "sticks" were dynamite. There was no direct evidence of their number, but Inspector Bergfeld answered in the affirmative when asked if he had had "occasion to investigate 36 sticks of dynamite" found at the address of the apartment complex. This number is consistent with the appearance of the "sticks" as photographed in the drawer where Roth discovered them. Toward the end of the trial, it was further stipulated that appellant had no permit authorizing him to possess dynamite.

[5]"1235. Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Section 770 merely requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial. (*People* v. *Johnson* (1968) 68 Cal.2d 646, 650, fn. 2 [68 Cal.Rptr. 599, 441 P.2d 111].)

nolly) could not "specifically" remember who had mentioned dynamite, nor "any mention about where any explosives or dynamite was being kept"; and, finally, that he did not "know" whether appellant had told him that he (appellant) had dynamite in the garage.

Connolly also gave the following testimony concerning the other events indicated: (1) He again admitted giving and signing the police statement on September 24, and that its contents conformed to his recollections at the time. He denied, however, that it refreshed his present recollection of the pre-September 23 conversation (to which the police statement referred, as will appear). (2) In the driveway conversation on September 23, it "must have been the case" that it was he who "mentioned something about there being explosives in the garage." (3) He had a "vague" recollection of having said, after the dynamite was discovered, "Jesus Christ, he wasn't kidding," and that he "must have been" referring to appellant. (4) He remembered having had a second conversation with Roth, at his (Connolly's) home on "the next night or something," and that "it had something to do with what had just occurred" and the dynamite, but he could not recall what he had said to Roth at the time.[6]

As a result of this testimony, the prosecution called Inspector Bergfeld, and recalled Arthur Roth, for the purpose of proving Connolly's prior inconsistent statements pursuant to Evidence Code section 1235. (See fn. 5, *ante.*) Inspector Bergfeld testified that he interviewed Connolly on September 24 concerning the dynamite and its discovery, and that Connolly's responses were reduced to a typewritten statement which he (Connolly) signed. Two paragraphs of the statement were read to the jury; the same portion, showing Connolly's signature, was admitted in evidence as a document.[7]

---

[6]Examining Connolly concerning his prior statement on each of these occasions, the prosecutor gave him "an opportunity to explain or deny" each statement as required by Evidence Code sections 1235 and 770. (See fn. 5, *ante.*)

[7]The admitted portion of the statement read as follows (italics added):
"About 2 or 3 weeks ago I had occasion to talk to Terry Petersen [appellant] in the vicinity of my apartment. During our conversation Terry said jokingly that *he had a box of dynamite in the garage,* after which we laughed and nothing more was said.

"On 9-23-69 Arthur arrived at my place. He and I were standing outside when a friend named Tom arrived. While all three of us were standing in the driveway in front of the garage admiring a new motorcycle one of us mentioned something about fire or explosives. *I then ventured the thought that there may be some explosives in the garage.* With this comment Tom went into the garage and took a dresser drawer from the second shelf. He showed Arthur and I the contents, which all three of us recognized as dynamite. I then said 'Jesus Christ, he wasn't kidding.' Arthur then took the drawer containing the dynamite and put it in his jeep.
"S/ Frederick M. Connolly"

Roth gave this testimony when recalled to the stand: On September 23, after the dynamite had been found in the garage and Connolly had seen it, Connolly said in Roth's presence "Jesus Christ, he wasn't kidding," that "[t]his is Terry's [appellant's] shit," and that "he [Connolly] had asked Terry and Terry said it was his." Over an objection by defense counsel,[8] Roth was also permitted to testify to a second conversation with Connolly, at the latter's apartment on the night of September 23, in which Connolly said that he (Connolly) "was informed that it [the dynamite] was there and that he . . . asked Terry, . . . and that Terry said that it was his and that he was going to remove it from the garage. . . . He said he'd get rid of it."

The cause went to the jury on the foregoing evidence; appellant did not testify, and offered no evidence in his defense. None of his contentions on appeal can be sustained; we affirm the judgment of conviction.

### The Hearsay Testimony

Appellant first contends that his conviction rests entirely upon "inadmissible hearsay." It is true that the only evidence associating him with possession of the dynamite consisted of his pre-September admission thereof as related by Connolly. It is also true that his admission was proved, in effect, by the testimony of Bergfeld and Roth, which was hearsay evidence. (Evid. Code, § 1200, subd. (a); Witkin, Cal. Evidence (2d ed. 1966) [hereinafter cited as "Witkin"]) § 445, p. 418.) We reject the "inadmissible hearsay" contention, however, because (1) the evidence was admissible by constitutional standards and under Evidence Code section 1235 as well, and (2), this being so, appellant waived any objection thereto.

■ Where the prior inconsistent statement of a person is admitted in a criminal case, pursuant to Evidence Code section 1235, the defendant is not denied the right of confrontation guaranteed him by the Sixth Amendment, and is not denied due process under the Fourteenth Amendment, if the declarant testifies at the trial and is thus available for cross-examination. (*California* v. *Green* (1970) 399 U.S. 149, 158, 164 [26 L.Ed.2d 489, 497, 500, 90 S.Ct. 1930]; *People* v. *Green* (1971) 3 Cal.3d 981, 985 [92 Cal.Rptr. 494, 479 P.2d 998].) This is so unless the declarant shows such "apparent lapse of memory," at the trial, as to affect the defendant's cross-examination opportunities to the point that his Sixth Amendment right of confrontation is violated by admission of the prior

---

[8]This was the first defense objection to any of the Bergfeld or Roth testimony just summarized, and the only such objection which the trial court overruled. (One subsequent objection to Roth's testimony was sustained. See fn. 9, *post.*)

inconsistent statement. (*California* v. *Green, supra,* at pp. 168-169 [26 L.Ed.2d at pp. 502-503]; *People* v. *Green, supra,* at pp. 989-990.) The perceptible character of the witness' "apparent lapse of memory" also poses the question (which is not of constitutional dimensions) whether the prior statement is admissible under state law because it is in fact "inconsistent" with his trial testimony. (*People* v. *Green, supra,* at pp. 985-989. See *California* v. *Green, supra,* at p. 170, fn. 19 [26 L.Ed.2d at p. 503].)

As previously indicated, Connolly was examined and cross-examined concerning his prior extrajudicial statements. Although he professed varying degrees of memory lapse, he admitted that he had in fact made the various statements attributed to him by Bergfeld and Roth; his "apparent lapse of memory" affected only his recollection of their details. He was cross-examined at length and without limitation concerning them, and the jury was able to examine and evaluate his demeanor as a witness. "The prescribed purposes of the confrontation clause being thus fulfilled," we conclude that his extrajudicial statements to Bergfeld and Roth were admissible "insofar as the Sixth Amendment is concerned." (*People* v. *Green, supra,* 3 Cal.3d 981 at pp. 989-991.) Thus, no constitutional objection thereto was available to appellant.

Connolly's testimony concerning *appellant's* extrajudicial statement (as made prior to September 23, according to the prosecution) was typically evasive and equivocal, and he (Connolly) was shown to have been a reluctant witness from the outset. Moreover, his "apparent lapse of memory" was not total: despite contradictions in his testimony on the subject, he admitted at some points that he remembered appellant saying "something" about dynamite. (Compare *People* v. *Sam* (1969) 71 Cal.2d 194, 208-210 [77 Cal.Rptr. 804, 454 P.2d 700]. See *People* v. *Green, supra,* 3 Cal.3d 981 at p. 988.) For these reasons, the trial court was entitled to doubt the genuineness of his claimed memory lapse, and his evasive answers—as to appellant—were fairly deemed to have been "implied denials" of the latter's declarations linking him (appellant) to the dynamite. Connolly's trial testimony to that point was consequently— and materially—"inconsistent" with his prior statements to Bergfeld and Roth. (*People* v. *Green, supra,* at pp. 988-989.) His prior statements were therefore admissible under state law. (Evid. Code, § 1235; *People* v. *Green, supra,* at pp. 987-988.)

It also appears that appellant's trial counsel made no objection to any part of Inspector Bergfeld's testimony, nor to the introduction of Connolly's written statement, nor to any part of the impeachment testi-

mony of Roth except for the latter's account of his conversation with Connolly on the evening of September 23. Except for that account, therefore, any objection to the other impeachment testimony of Bergfeld and Roth must be deemed waived for purposes of the appeal.[9] (Evid. Code, § 353, subd. (a); *id.,* Assembly Committee Comment; Witkin, § 1285, par. (a), p. 1188.)

▉ The waiver rule should not be applied in a criminal case if the admission of the unchallenged evidence amounts to a denial of due process (Witkin, § 1308, par. (b), p. 1210) or if the failure to object to it demonstrates such ineptness, on the part of silent counsel, as to show that the defendant has been denied his constitutional right to effective representation. (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 463-466 [34 Cal.Rptr. 863, 386 P.2d 487].) ▉ Because Connolly's prior inconsistent statements were constitutionally admissible (as we have seen), there is no due process problem here. It appears, also, that trial counsel was fully competent, that he understood the hearsay rule and invoked it on occasion, but that he made a tactical choice to forego futile objections and to challenge Connolly's credibility in arguing reasonable doubt to the jury. A review of counsel's argument to the jury indicates that he did exactly this. Accordingly, no *Ibarra* conduct (*People* v. *Ibarra, supra*) appears, and we may reject appellant's hearsay contention upon the ground that he waived any objection to the evidence in the trial court. As an alternative ground of decision, we do so.

### Search and Seizure

▉ Appellant contends that the trial court's admission of the evidence pertaining to the discovered dynamite (see text at fns. 2, 3 and 4, *ante*) was prejudicially erroneous because the dynamite itself was seized in an unlawful search by Roth. But, in the first place, Roth was a police "trainee," not an officer, and in the police department of Oakland, not Berkeley. (See *People* v. *Wolder* (1970) 4 Cal.App.3d 984, 993 [84 Cal.Rptr.

---

[9] Appellate counsel, who was not defense counsel at the trial, states in his opening brief that "[t]here were defense objections to both [Bergfeld's and Roth's] accounts." Although the Attorney General has not said so, this broad assertion is not supported by the record except to the extent noted in the text. There were no objections during Bergfeld's testimony, and none to the admission of the written statement. There were but two objections during the testimony of Roth; one was sustained and one was overruled. (See fn. 8 and accompanying text, *ante.*) The single portion of Roth's testimony admitted over objection substantially repeated similar testimony by Roth, and some of Connolly's trial testimony, quoting appellant to the same effect and received without objection. Because it was cumulative only, we perceive no prejudicial error in its admission over objection. (*People* v. *Watson* (1956) 46 Cal.2d 818, 835-838 [299 P.2d 243].)

788].) It fairly appears he entered the garage out of concern for his own safety as a tenant of the apartment complex, and was acting as a private citizen only. ■ The Fourth Amendment prohibition against unreasonable searches and seizures does not apply to searches by persons acting in a private capacity. (*People* v. *Wolder, supra.*) ■ Secondly, the dynamite was apparently in plain sight (see fn. 3, *ante*) in a garage used in common by all the apartment tenants, so that any "expectation of privacy," on the part of appellant in placing it there, would have been unreasonable. (*People* v. *Terry* (1969) 70 Cal.2d 410, 428 [77 Cal. Rptr. 460, 454 P.2d 36].) The evidence, thus, would have been constitutionally admissible over objection.

But, again, there was no objection to its introduction and, again, we perceive no due process problem or any demonstration of incompetence on the part of trial counsel. For this reason, and as an alternative ground of decision, we reject appellant's search and seizure point upon the ground that he waived any objection in the trial court. (Witkin, § 62, p. 64.)

### *Appellant's Contentions Based Upon the Relevant Statutes*

Appellant's contentions in this regard are based upon various sections of the Health and Safety Code which were in effect in 1969.[10] Under section 12305 as it appeared in chapter 7 (of pt. 1 of div. 11) thereof, knowing possession of an explosive by a person not in "lawful possession" was a felony. (See fn. 1, *ante.*) Under section 12304 in chapter 7, "reckless and malicious possession" was also a felony under specified circumstances, and guilt thereof was presumed where specified circumstances appeared as to a person not in "lawful possession" of the explosive. (*Ibid.*) For purposes of chapter 7, section 12303 defined "lawful possession" as possession in the course of (a) the business of manufacturing, selling, or transporting explosives, (b) legitimate blasting operations, (c) legitimate manufacturing or experimentation operations, and (d) in transporting explosives on the highways in accordance with specified provisions of the Vehicle Code. Section 12101 (in ch. 4) prohibited these uses (except for selling) without a permit from the local fire chief. Under section 12400, as it appeared in chapter 9, any violation of part 1 (of div. 11 of the code) was a misdemeanor "except as provided in Chapter 7."

■ From a cross-reading of these statutes, appellant argues that the

---

[10]The sections mentioned have since been repealed and replaced. (For their text, see Stats. 1967, ch. 1497, § 2, chs. 4 [pp. 3498 et seq.], 7 [pp. 3502-3503] and 9 [p. 3504]; hereinafter, all statutory references are to the Health & Saf. Code sections enacted therein.)

evidence is insufficient to support his conviction because the record does not show that he was "not in the lawful possession" of dynamite; i.e., there is no evidence that he was *not* engaged in any of the pursuits which would have made his possession "lawful" under section 12303. This argument rests upon the premise that the People bear the burden of proving, as an element of the corpus delicti in their case in chief, the essential fact that a defendant charged with violation of sections 12305 and 12304 was *not* "in the lawful possession," of the explosives involved, as the quoted term is defined in section 12303. Collaterally, but necessarily, the argument invokes the rule that admissions by the same defendant are not admissible in the absence of independent proof of the corpus delicti. (Witkin, § 474, pp. 436-437.)

Responding to this argument, the Attorney General urges (1) that the record adequately shows that appellant was not engaged in an occupation which would put him in "lawful possession" of the dynamite and (2) that in any event, appellant, not the People, bore the burden of showing that he was. The second point is doubtful. (See *People* v. *Quarez* (1925) 196 Cal. 404, 410-414 [238 P. 363]; *People* v. *Fitzgerald* (1936) 14 Cal.App.2d 180, 195 [58 P.2d 718]; *People* v. *Navarro* (1969) 271 Cal.App.2d 576, 577-578 [76 Cal.Rptr. 660]. See also *People* v. *Montalvo* (1971) 4 Cal.3d 328, 333, fn. 3 [93 Cal.Rptr. 581, 482 P.2d 205]. Compare *People* v. *Martinez* (1953) 117 Cal.App.2d 701, 708 [256 P.2d 1028] and cases cited.) On the other hand, and although appellant's occupation was not shown, the apartment garage was obviously a residential facility and not a place of business. The amount of dynamite involved was so small (see fn. 4, *ante*), and the circumstances of its casual (and careless) storage were such, as to support the inference that appellant was not legitimately engaged in its manufacture or commercial distribution. The fact that he did not have a permit to possess it further suggests that his possession had no lawful business purpose. This evidence is not overwhelming, but the inferences are reasonably clear and the People, laboring with the *non*existence of the facts in question, could not readily have offered much more. We therefore sustain the Attorney General on his first point: under the circumstances, the evidence is sufficient to support the conviction as to appellant's not having been in "lawful possession" of the dynamite. It was also sufficient to establish the corpus delicti in that regard.

From the same statutory premises, appellant further contends that the trial court erred in refusing to give his instruction on the "lesser included offense" of possession of dynamite without a permit (a misdemeanor under § 12400). Within the statutory scheme, appellant

is arguing that the jury should have been instructed in substance that appellant could be found guilty of the misdemeanor offense if he was in the legitimate business of selling explosives but was doing so without a permit. But there is no proof that he was engaged in such business and, as we have seen, the evidence supports inferences to the contrary. Consequently, the requested instruction was properly refusd.

■ In effect, appellant also challenges the validity of the statutory presumption of "reckless and malicious possession" which arises under the last paragraph of section 12304. (See fn. 1, *ante.*) Its validity, however, has repeatedly been sustained by the courts. (*People* v. *Fitzgerald*, *supra*, 14 Cal.App.2d 180 at pp. 191-198; *People* v. *Buyle* (1937) 20 Cal.App.2d 650, 656 [68 P.2d 268]. See *Romero* v. *Superior Court* (1968) 266 Cal.App.2d 714, 721 [72 Cal.Rptr. 430].)

### *Appellant's Remaining Contentions*

■ We dispose of appellant's remaining contentions as follows: (1) Although Inspector Bergfeld told Connolly that he (Connolly) faced possible charges in connection with the dynamite, the officer interviewed him on September 24 without giving a *Miranda* warning. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) Connolly's statements to Inspector Bergfeld were nonetheless admissible at the trial of appellant, who lacked standing to assert Connolly's *Miranda* rights. (*People* v. *Teale* (1969) 70 Cal.2d 497, 506 [75 Cal.Rptr. 172, 450 P.2d 564].) (2) ■ In denying probation and sentencing appellant, the trial court considered certain admissions which he (appellant) had made to Inspector Bergfeld, in another interview, which may have violated his (appellant's) *Miranda* rights. It has been held, however, that such evidence may be considered as a basis for revoking parole (*In re Martinez* (1970) 1 Cal.3d 641, 644-651 [83 Cal.Rptr. 382, 463 P.2d 734]) and probation (*People* v. *Hayko* (1970) 7 Cal.App.3d 604, 609-610 [86 Cal.Rptr. 726]) unless the police conduct has been such as to "shock the conscience." As the latter circumstance does not appear in the present case, the same reasoning applies and no prejudicial error has been shown.

(3) The trial court did not restrict the cross-examination of Roth by appellant's trial counsel unduly or at all; counsel was free to pursue his questioning of Roth as to the matters noted in appellant's brief in this regard, but elected not to do so. (4) The jury instruction on "confessions," as distinguished from "admissions," was not erroneous, in light of the evidence of appellant's oral statements to Connolly; had it been erroneous,

it could not have been prejudicial. (*People* v. *Watson, supra,* 46 Cal.2d 818 at pp. 835-838.) (5) Appellant's other contentions do not warrant discussion; they are without merit.

The judgment of conviction is affirmed.

Devine, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1972.