[Crim. No. 32852. Second Dist., Div. Five. Aug. 13, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
RUDOLPH O'QUINN et al., Defendants and Respondents.

**COUNSEL**

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Appellant.

Dean E. Farrar and Lee B. Ackerman, under appointments by the Court of Appeal, Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Francisco X. Gomez, Karen M. Berlie, and John Hamilton Scott, Deputy Public Defenders, and Earl C. Broady, Jr., for Defendants and Respondents.

OPINION

**ASHBY, J.**—The People appeal from an order under Penal Code section 995 dismissing an information charging defendants Rudolph O'Quinn, Ola Robertson, and Veola Henderson with murder and attempted murder.

The previously unsolved murder was committed August 24/25, 1975. The instant preliminary hearing was held January 31, 1978, and the crucial evidence was contained in the statements of a witness, Algen Sledge, made to the police on January 7 and January 19, 1978. In her testimony at the preliminary hearing, the witness Sledge professed not to remember either the circumstances of the murder or the statements she had recently made to the police. The magistrate found the witness' "I don't remember" responses to be evasive and untruthful and therefore admitted into evidence the statements to the police as prior inconsistent statements under Evidence Code section 1235. (*People v. Green* (1971) 3 Cal.3d 981, 985-989 [92 Cal.Rptr. 494, 479 P.2d 998].) The superior court disagreed with the magistrate's ruling and dismissed the information under Penal Code section 995 on the ground there was no adequate basis in the record for admission of the statements under Evidence Code section 1235.

Sledge is the sister of defendants Ola (Happy) Robertson and Veola Henderson, and the girl friend of defendant Rudolph (Rusty) O'Quinn, who is the father of her five-and-a-half-year-old child. According to her statements to the police, one night in August 1975 (determined from the other evidence to be Aug. 24/25), Sledge and defendants were present at Happy's house in the Jordan Downs Housing Project. The murder victim, identified by other evidence as Ella Marie Harris, was also present and was accused by Happy of having burglarized Happy's house and of having stolen marijuana. Happy hit the victim in the head with the butt of a shotgun. Rusty and Happy carried the victim upstairs and tied her to a bed. While Rusty and Happy were "cooking up [some] heroin in the bathroom," Veola held a shotgun over the victim. Rusty injected heroin into the victim's arm and in a few minutes she passed out.

Rusty brought the victim downstairs and placed her body in a trash can which he had brought into the residence. Rusty and Happy carried the trash can out to Happy's car, and placed it in the trunk. Happy went to a neighbor's residence and came back with a sawed-off shotgun.

Defendants and Sledge entered the car. Happy was driving. She drove to Valerie Sampson's house, where Veola was let off. Happy and Rusty then took Sledge with them, looking for a place to dump the body. They arrived at a dirt area or alley. Rusty got out, opened the trunk, removed the trash can and dumped the body onto the ground. Rusty came back to the car and stated, "She's not dead. I'm going to have to shoot her." Sledge stated, "No, don't do that," and Happy said, "Well, hurry up." Rusty took the shotgun, pointed it at the victim's head, and fired. He returned to the car. They returned to Valerie Sampson's house to pick up Veola and the kids, then went to the residence of Sledge's brother in Compton where they stayed for two days.

The victim was found by police in an alley on the morning of August 25, 1975, lying in a pool of blood around her head. The autopsy showed the cause of death to be a shotgun wound to the head.

Called as a witness by the People at the preliminary hearing of January 31, 1978, Sledge testified that she did not remember being present when a young lady was shot on August 25, 1975, and that she did not remember speaking to police officers in January of 1978 about being so present. She did not remember any conversation with Officers Diot and King or Officer Tankersley on January 7, 1978, about a murder. She replied "I don't remember" to a series of questions about the details she had related in such conversations.

In her continued testimony on February 1, 1978, she stated that she did not remember her testimony of the previous day. A tape recording of her conversation with Officer Tankersley of January 7, 1978, failed to refresh her recollection. She did not recognize her voice on the tape or remember the conversation of January 7.

Subsequently at the hearing Sledge was recalled as a witness. She stated that she did not remember going to the district attorney's office and giving a statement to Sergeant Sharp on January 19, 1978, or telling Sergeant Sharp that Veola held a shotgun on the victim.

On cross-examination by defense counsel, Sledge testified she had been a heavy user of "angel dust" in the past year and a half, that her use of drugs had led to hospitalization at Metropolitan State Hospital in October 1977, and that she had experienced lapses of memory since using angel dust.

■ The magistrate found that the witness' "I don't remember" responses were evasive and untruthful. In *People v. Green, supra*, 3 Cal.3d 981, 988-989, the California Supreme Court held that although in normal circumstances the testimony of a witness that she does not remember an event is not "inconsistent" with a prior statement by her describing that event (*People v. Sam* (1969) 71 Cal.2d 194, 208-210 [77 Cal.Rptr. 804, 454 P.2d 700]), a deliberately evasive "I don't remember" constitutes an implied denial of the fact, which is thus materially inconsistent in effect with the prior statement, rendering the prior statement admissible under Evidence Code section 1235.

The magistrate found unbelievable the witness' testimony that she did not remember making statements to the police, in light of the fact that the prior statements to the police were, respectively, a little less than two weeks and a little more than three weeks prior to the hearing. The magistrate also commented that on at least two occasions the witness replied "I don't remember" before the prosecutor had even completed the question, and that even where the questions were first completed, the "I don't remember" responses were immediate without any apparent attempt to ponder or to recall the information.

Further supporting the magistrate's ruling is the witness' unbelievable testimony on February 1 that she could not remember her testimony of January 31. The witness' own testimony that she is the sister of defendants Robertson and Henderson, and the girl friend of defendant O'Quinn, who is the father of her five-and-a-half-year-old child, shows ample motive for her to be evasive in her testimony.[1]

Finally, in determining the credibility of the witness' testimony the magistrate was able to observe her demeanor. (*United States v. Han-*

---

[1]At one point the magistrate mentioned another factor, but the record is vague as to whether defense counsel persuaded the magistrate not to rely on it. The same magistrate had presided over a previous preliminary hearing in this case on January 25, 1978. At that hearing an attorney was appointed to advise the witness Sledge. After consulting with his client, the attorney informed the court that to each question the prosecutor would ask, the witness would refuse to answer based on the privilege against self-incrimination. Those proceedings were dismissed, and new charges were filed. The witness apparently declined an offer from the prosecutor of immunity, and she testified freely and voluntarily at the instant preliminary hearing. The magistrate initially felt the "I don't remember" responses were inconsistent with the previous claim of privilege. On appeal defendants argue this was improper reliance upon the prior preliminary hearing and the invocation of the privilege. We find it unnecessary to discuss these issues, as there is some indication the magistrate was persuaded not to rely upon that factor, nor do we.

*kish* (4th Cir. 1974) 502 F.2d 71, 78.) ■ Whether to give or with-hold credibility to the testimony of a witness is exclusively the function of the magistrate; the superior court, sitting as a reviewing court on a motion under Penal Code section 995, cannot reweigh the evidence or determine the credibility of witnesses. (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].)

■ Nevertheless defendants contend that the superior court was correct and that the magistrate erred in admitting the prior statements into evidence. Defendants contend that the *Green* rule is limited to cases in which the witness either admits or denies making the statement or suffers "selective" forgetfulness at the trial or hearing, testifying as to at least some of the events surrounding the crime, while forgetting others. Defendants contend that where the witness' responses at the trial or hearing consist solely of "I don't remember," there is no inconsistency between the testimony and the prior statements, no matter what other evidence there may be that the witness is lying. They contend that in such circumstances *People* v. *Sam, supra*, rather than *People* v. *Green*, is controlling. We conclude that defendants are not correct, and that the true rule under *Green* is that a witness' prior statements are admissible so long as there is a reasonable basis in the record for concluding that the witness' "I don't remember" responses are evasive and untruthful.

In *Green* the California Supreme Court said, "In normal circumstances, the testimony of a witness that he does not remember an event is not 'inconsistent' with a prior statement by him describing that event. (*People* v. *Sam* [*supra*] (1969) 71 Cal.2d 194, 208-210 [77 Cal.Rptr. 804, 454 P.2d 700], and cases cited.) But justice will not be promoted by a ritualistic invocation of this rule of evidence. *Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement* (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 699 [39 Cal.Rptr. 64]), *and the same principle governs the case of the forgetful witness.*" (*People* v. *Green, supra*, 3 Cal.3d at p. 988; italics added.) In holding the testimony admissible in that case, the court relied not only on the incredibility of the witness' selective forgetfulness but also upon the brief interval between the events and the trial and upon other indicators of his reluctance to testify. (*Id.*, at pp. 987, 988 & fn. 6.)

The parties refer us to a number of California cases following the *Green* rationale. In each there was at least some testimony by the wit-

ness as to some of the events surrounding the crime, or an admission or denial of having made the prior statements.[2] But no case has been cited to us where the trial court found the "I don't remember" responses to be evasive based on factors other than selective forgetfulness, but such finding was overturned on the ground that partial or selective forgetfulness is a *sine qua non* of the *Green* rationale. In its post-*Green* cases the California Supreme Court has not elucidated what kind of record is necessary to support a finding of evasiveness. (See *People v. Parks* (1971) 4 Cal.3d 955, 960 [95 Cal.Rptr. 193, 485 P.2d 257]; *Clifton v. Ulis* (1976) 17 Cal.3d 99, 104-105 [130 Cal.Rptr. 155, 549 P.2d 1251].)

Where a trial court's finding that a witness' "I don't remember" responses are deliberately evasive has a reasonable basis in the record, then the witness' prior statements should be deemed inconsistent in effect with the in-court testimony and should be admissible under section 1235, even where the witness professes no recollection at all of the underlying events or of having made the statements. As urged by Wigmore, "[T]he unwilling witness often takes refuge in a failure to remember, and the astute liar is sometimes impregnable unless his flank can be exposed to an attack of this sort. An absolute rule of prohibition would do more harm than good, and the trial court should have discretion." (3A Wigmore, Evidence (Chadbourn rev.ed. 1970) § 1043, p. 1061; fns. omitted.)

■ Defendants argue that to hold the prior statements admissible in the particular circumstances of this case would violate due process and defendants' right to confront witnesses as guaranteed by the United States and the California Constitutions. They contend that the witness, although testifying on the stand, was not subject to cross-examination in a practical sense as to the circumstances of the crime or her statements to the police, as to which she invariably claimed lack of recollection. Defendants rely upon the suggestion in the lead opinion in *California v. Green* (1970) 399 U.S. 149, 168-169, and footnote 18 [26 L.Ed.2d 489, 502-503, 90 S.Ct. 1930], that there was an issue "lurking" in that case as to "[w]hether Porter's apparent lapse of memory so af-

---

[2]See *People v. Barrandy* (1971) 20 Cal.App.3d 16, 22 [97 Cal.Rptr. 345]; *People v. Wheeler* (1971) 23 Cal.App.3d 290, 309 [100 Cal.Rptr. 198]; *People v. Petersen* (1972) 23 Cal.App.3d 883, 892 [100 Cal.Rptr. 590]; *People v. Burciago* (1978) 81 Cal.App.3d 151, 165-166 [146 Cal.Rptr. 236]; *People v. Moreno* (1973) 32 Cal.App. 3d Supp. 1, 6 [108 Cal.Rptr. 338]; *People v. Loyd* (1977) 71 Cal.App.3d Supp. 1, 11 [139 Cal.Rptr. 693].

fected Green's right to cross-examine as to make a critical difference in the application of the Confrontation Clause in this case. . . ." The United States Supreme Court did not reach that issue, and on remand the California Supreme Court found no such denial of confrontation rights in the circumstances of that case. (*People* v. *Green, supra*, 3 Cal.3d 981, 989-990.)

Other authorities which have more fully considered the question, moreover, take the view that the asserted lack of recollection by a witness who is on the stand does not result in a denial of confrontation rights. First, Justice Harlan, concurring in *California* v. *Green, supra*, 399 U.S. at pages 188-189 [26 L.Ed.2d at pages 514-515], stated: "The fact that the witness, though physically available, cannot recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the statement was given, does not have Sixth Amendment consequence. The prosecution has no less fulfilled its obligation simply because a witness has a lapse of memory. The witness is, in my view, available. To the extent that the witness is, in a practical sense, unavailable for cross-examination on the relevant facts, for reasons stated in Part II, I think confrontation is nonetheless satisfied." (Fn. omitted.)

In *United States* v. *Payne* (4th Cir. 1974) 492 F.2d 449, the witness Burrell denied any recollection at trial of the events surrounding the crime or of statements he made to investigators. Following the lead of Mr. Justice Harlan, the majority upheld the admissibility of Burrell's prior statement against a similar confrontation argument. The court stated: "While the majority of the Supreme Court has not yet committed itself to the thesis of Mr. Justice Harlan, we think, nevertheless, that under the principles of *California* v. *Green*, there was no denial of the right of confrontation in the instant case. Burrell was produced as a witness and he was available for cross-examination. It is true that by reason of Burrell's claim of complete failure of recollection, the scope of effective cross-examination excluded inquiry with regard to the substantive evidence of guilt on the part of Burrell's brothers. But this was no different, except in degree, from a case in which a declarant has made a detailed earlier statement and at the trial, despite efforts to refresh his recollection, remembers only some, but not all, of the details. In such a case, we do not understand that any court, before or after the decision in *California* v. *Green*, has held that the Confrontation Clause has been violated by admission of the statement in its entirety, and yet, if defendant's contention is to be accepted, logic would require the exclusion, on

constitutional grounds, of any earlier statement where there was only a claim of partial failure of recollection to the extent of the claimed failure of recollection. [¶] Burrell was available for cross-examination about other events contemporaneous with the period of the alleged conspiracy; he could have been cross-examined about possible bias or prejudice toward his brothers; and he could have been interrogated by the government about why he failed to recollect what he had previously said and what pressures, if any, had been exerted upon him by his brothers to encourage his failure of recollection of events incriminating them. The jury would thus have had a substantial basis on which to determine the truthfulness of Burrell's previous statement and full opportunity to observe Burrell's demeanor and manner of testifying so that it could make a determination of whether there was a genuine failure of recollection and its significance on the persuasiveness of his earlier statement." (492 F.2d at p. 454.)

Similarly, in *United States* ex rel. *Thomas* v. *Cuyler* (3d Cir. 1977) 548 F.2d 460, 463, the court stated: "A witness who refuses to be sworn or to testify at all or one who, having been sworn, declines to testify on Fifth Amendment grounds, has not been thus made available for cross-examination. But if he has been sworn and made available the fact that he suffers or feigns a loss of memory does not lessen the fact that the defendant has been confronted with him and presented with the opportunity to cross-examine him to the extent possible, which is all that the Sixth Amendment requires. We, accordingly, hold that the use which the Commonwealth in the present case made of Gwaltney's prior statement did not offend the Confrontation Clause of the Sixth Amendment, either because of the fact that Gwaltney was not subject to cross-examination when it was made or because of the fact that he claimed a loss of memory when it was sought to cross-examine him about it." (Fns. omitted. See also *People* v. *Pepper* (1977) 568 Colo. 446 [568 P.2d 446, 448-449].)

In this case, although Sledge was ostensibly unable to remember the circumstances of the crime or her statements to the police, she was nevertheless on the stand and available for cross-examination. The defense was able to cross-examine her about her use of drugs and their effect on her memory, and could have questioned her about possible bias. (*United States* v. *Payne, supra*, 492 F.2d at p. 454; *People* v. *Burciago, supra*, 81 Cal.App.3d 151, 166.) It is possible that further probing by cross-examination might have jogged the witness' memory. That defense counsel chose not to cross-examine her as to these details does not show

she was unavailable for cross-examination. (*People* v. *Green, supra*, 3 Cal.3d 981, 990.) That she made the statements in question to the police was amply verified by the other evidence, and the magistrate was able to observe her demeanor. Under the circumstances there was no denial of the right to confrontation in the United States or the California Constitutions. (*United States* v. *Payne, supra*; see *People* v. *Burciago, supra*, at pp. 165-166; see also *People* v. *Chavez* (1980) 26 Cal.3d 334, 349-361 [161 Cal.Rptr. 762, 605 P.2d 401].)[3]

The record reasonably supports the magistrate's finding of admissibility of the statements.

The order of dismissal is reversed.

Stephens, Acting P. J., and Hastings, J., concurred.

The petitions of respondents Henderson and Robertson for a hearing by the Supreme Court were denied October 8, 1980. Bird, C. J., Mosk, J., and Newman, J., were of the opinion that the petitions should be granted.

---

[3]Defendant Veola Henderson's suggestion at oral argument that even including the prior Sledge statements the evidence is insufficient to hold Henderson to answer, is without merit. The testimony cited by Henderson in which the witness referred to Veola "Robertson" (*sic*) involved an obvious slip of the tongue when viewed in context.

Nor does the instant appeal involve the holding of *In re Johnny G.* (1979) 25 Cal.3d 543, 547 [159 Cal.Rptr. 180, 601 P.2d 196], that "'[a]n extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient *to sustain a conviction* in the absence of other evidence tending to connect the defendant with the crime.'" (Italics added.) Here we are concerned only with probable cause, not the quantum of evidence necessary to sustain a conviction. (*People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].)