Filed 7/27/2016

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEPHEN DEBOUVER,<br><br>    Defendant and Appellant. | 2d Crim. No. B262455<br>(Super. Ct. No. BA420698)<br>(Los Angeles County) |

Stephen Debouver, a career criminal with 26 different aliases, knows his way around a police station. He also knows his way around a courtroom. This time, he was convicted by jury of first degree residential burglary with a "person present" finding. (Pen. Code, §§ 459; 667.5, subd. (c)(21)).[1] In a bifurcated proceeding, the trial court found that appellant had suffered a prior strike conviction (§§ 667, subd. (d); 1170.12, subd. (b)), a prior serious felony conviction (§ 1192.7, subd. (c)(18), and six prior separate prison terms (§ 667.5, subd. (b).) Appellant was sentenced to state prison for 13 years. He appeals and contends, among other things, that the burglary "person present" finding is not supported by the evidence. We affirm.

*Facts and Procedural History*

On January 22, 2014, at approximately 3:00 a.m., Elyahu Feiner awoke to the sound of car alarms in the apartment complex which he managed and where he lived. Feiner went into the secured subterranean garage and saw appellant leaning into a black Jeep that had a smashed window. Feiner asked if he lived there. Appellant said "yes"

---

[1]   All statutory references are to the Penal Code.

and walked away with a metal tool in his hand. Appellant got on a red bike and rode off with a backpack. Feiner called the police.

Los Angeles police responded to the 911 call and found three vehicles with smashed windows. The Jeep was ransacked. A Ford Escape and a black Audi were also ransacked and had smashed windows. Fresh blood was inside the Jeep and Ford Escape.

At 4:00 a.m., Detective Eduardo Martinez stopped appellant on a red bike about eight blocks from the apartment complex. Appellant fit the description of the burglary suspect and was carrying a backpack. Inside the backpack were six pairs of ear buds, an iPad, an iPhone, a flashlight, a pocket knife, charger plugs for Apple products, a Samsung car adaptor/charger, and a nylon case with tools. Detective Martinez searched the area where appellant was stopped and found a screwdriver.

After Feiner identified appellant in a field show-up, appellant was arrested and transported to the police station. Appellant had a cut on his right finger and said that he had been drinking. Waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), appellant told Officer Tony Im and Detective Raul Lopez that he broke into the apartment complex garage and vehicles with the screwdriver. Appellant was not the registered owner of the iPhone in the backpack. One of the iPhone chargers, which was taken from the Ford Escape, had blood on it. It was later determined that the blood inside the damaged vehicles matched appellant's DNA.

Appellant was charged with first degree residential burglary. Appellant made a *Faretta* request to represent himself which was granted. A month later, appellant requested advisory counsel. The trial court denied the request. It noted that appellant was competent to represent himself and that standby counsel had been appointed. Thereafter, appellant brought a motion to exclude his *Miranda* statement which was denied.

At trial, appellant stated that he was drunk and blacked out after consuming alcohol and prescription medication. He did not remember what happened or even recall speaking to the police. On cross-examination, appellant was questioned about his "*Miranda* statement" in which he said that he "jimmied [his] way" into the apartment

2

complex with the screwdriver. During the police interview, appellant admitted that he broke into several cars and cut his finger. Appellant acknowledged that he fled on his bike after Feiner entered the garage and confronted him.

*Advisory Counsel*

Appellant argues that the trial court undermined his Sixth Amendment right to represent himself when it denied his request for advisory counsel. The request was made several weeks after the court granted appellant's *Faretta* motion.

It is settled that a defendant who elects to represent himself has no constitutional right to advisory counsel or any other form of hybrid representation. (*People v. Moore* (2011) 51 Cal.4th 1104, 1120; *People v. Garcia* (2000) 78 Cal.App.4th 1422, 1430.) The decision to grant or deny a request for advisory counsel is discretionary and will not be set aside absent a showing the ruling is arbitrary, capricious, or whimsical. (*People v. Crandell* (1988) 46 Cal.3d 833, 863.) In ruling on such a request, the trial court may consider defendant's demonstrated legal abilities and reasons for seeking the appointment of advisory counsel, including evidence of any manipulative purpose. (*Id.*, at pp. 863-864.) Other factors include the seriousness of the charges, the complexity of the issues, and defendant's education and familiarity with the justice system. (*Ibid.*; *People v. Bigelow* (1984) 37 Cal.3d 731, 743-744.) "[T]he right to the assistance of counsel, guaranteed by the state and federal Constitutions, has never been held to include a right to the appointment of advisory counsel to assist a defendant who voluntarily and knowingly elects self-representation. [Citation.]" (*People v. Crandell*, *supra*, 46 Cal.3d at p. 864.)

The trial court ruled that it was not required to appoint advisory counsel but acknowledged that courts may do so. This is not a case in which the trial court failed to exercise its discretion or believed there is no such thing as advisory counsel. (See *e.g.*, *People v. Crandell*, *supra*, 46 Cal.3d at p. 862; *People v. Bigelow*, *supra*, 37 Cal.3d at p. 743.) Substantial evidence supported the finding that appellant was capable of representing himself without advisory counsel. He had represented himself in a prior case and demonstrated that he could competently represent himself in the present case.

3

Appellant brought a motion for pro per funds, hired a private investigator, sought discovery, retained an expert, and brought motions to disqualify the trial judge and to exclude evidence. He makes no showing that the trial court erred in not appointing advisory counsel or that appellant was prejudiced by the ruling. (*People v. Crandell*, *supra*, 46 Cal.3d at pp. 862-866.)

Appellant argues that he could have presented a more convincing defense had the trial court appointed advisory counsel. Appellant testified that he consumed so much alcohol and medication that he could not remember what happened. The jury did not believe him. Appellant claims that advisory counsel, if appointed, would have requested a jury instruction on voluntary intoxication. But those instructions were given. The trial court instructed on voluntary intoxication and how it may affect appellant's ability to form the requisite specific intent to commit a burglary. (CALJIC 4.21 & 4.22.)

Appellant also argues that advisory counsel could have advised appellant to hire an expert to explain the effects of alcohol and prescription medication. Appellant was and is no stranger to the criminal justice system.[2] He was and is "trial savvy." He hired an expert on confessions without the assistance of counsel. One can only speculate on whether appellant would have listened to advisory counsel and hired another expert. "Trying to assess prejudice in this setting would amount to 'speculation running riot.' [Citation.]" (*People v. Bigelow*, *supra*, 37 Cal.3d at pp. 745-746.)

Appellant argues that advisory counsel could have warned him about the perils of testifying and how it would subject him to impeachment. A defendant's decision to testify is personal and must be honored even when the defendant is represented by counsel and counsel does not want to call the defendant as a witness. (*People v. Lucas* (1995) 12 Cal.4th 425, 444.) Had appellant not testified, the jury would

---

[2] Since achieving majority, appellant has accumulated quite a "rap sheet." Since 1978, he has, in addition to 20 other offenses, 14 theft related cases bringing to mind John Steinbeck's phrase: "He rejected the theory of private ownership of removable property almost from birth." (*Sweet Thursday* (1954) John Steinbeck, Penguin Books (1996 Edition, p. 11).)

4

have heard the same damning evidence: testimony that the apartment manager caught appellant in the garage, that appellant cut his finger and bled inside the vehicles, that the blood DNA match was conclusive, that the police found the screwdriver, and that stolen property was in appellant's backpack. It is not reasonably probable that he would have obtained more favorable result had advisory counsel been appointed. (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 716 [applying *People v. Watson* (1956) 46 Cal.2d 818 harmless error analysis].)

*Miranda Statement*

Appellant claims that his statements were the product of police coercion. Appellant forfeited the issue by not raising it at trial. (*People v. Kennedy* (2005) 36 Cal.4th 595, 611-612 [failure to object on a coercion theory forfeited claim that coerced testimony was erroneously admitted], overruled on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 458-459.)

Appellant argued that he was too intoxicated to waive his *Miranda* rights. Officer Im testified that appellant had been drinking but voluntarily and knowingly waived his *Miranda* rights and provided an oral and written statement. Appellant testified that he "blacked out," that "my will was overborne," and "I was not in the right state of mind to give the confession." Discrediting appellant's testimony, the trial court found that appellant was sober enough to flee on a bike and waive his *Miranda* rights. The court reasonably concluded that appellant's intoxication did not render his statements involuntary.[3] Our Supreme Court "has repeatedly rejected claims of incapacity or

---

[3] Appellant argues that the trial court erred in not listening to the audio recording of the *Miranda* interview. Appellant did not specifically ask the trial court to play the recording but did say "I'd like to hear the audio." The trial court agreed that it "would shed some light on your sobriety that night" but noted that Officer Im had already testified that appellant appeared to be drunk. Appellant did not press for a ruling on his request when asked whether there was any other evidence or testimony he wanted to present. Appellant responded "No, sir."

The audio recording, which was received into evidence, has been transmitted to this court for our review. (Cal. Rules of Ct., rule 8.320(e); *People v. Linton* (2013) 56

5

incompetence to waive *Miranda* rights premised upon voluntary intoxication or ingestion of drugs, where, as in this case, there is nothing in the record to indicate that the defendant did not understand his rights and the questions posed to him. [Citation.]" (*People v. Clark* (1993) 5 Cal.4th 950, 988, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Breaux* (1991) 1 Cal.4th 281, 301.) Intoxication alone does not render a confession involuntary. (*People v. Maury* (2003) 30 Cal.4th 342, 411.) Appellant makes no showing that any false promises of leniency were made or that he suffered from a physical, mental or alcohol/drug impairment that was exploited by the police to coerce a confession.

Appellant was familiar with law enforcement and had been in and out of the criminal justice system as an adult since 1978. He not only signed the *Miranda* waiver form but agreed to provide, and did provide, a written statement. His answers were responsive to the questions asked and support the finding that he voluntarily and knowingly waived his *Miranda* rights. (See e.g., *People v. Whitson* (1998) 17 Cal.4th 229, 247-248 [defendant's decision to answer questions after indicating he understood his *Miranda* rights supported a finding of implied waiver].)

Appellant argues that he blacked out and that the alcohol and prescription drugs in his system made him vulnerable to police coercion. Detective Lopez, who sat in on the interview, did not believe that appellant was under the influence of drugs or alcohol. Appellant coughed and sneezed and appeared to have a bad cold, but wanted to talk. This is reflected in the audio recording. Appellant can be heard joking with the officers and loudly writing out his confession on a metal table as he discusses the case with the officers.

Assuming, arguendo, that the trial court erred in not excluding the statements, any error was harmless beyond a reasonable doubt. (*Arizona v. Fulminante*

Cal.4th 1146, 1176-1177.) We have listened to the recording. We note that appellant had a bad cold, a runny nose, and sounded groggy. But, he was responsive to the officers' questions.

6

(1991) 499 U.S. 279, 306-309; *People v. Samayoa* (1997) 15 Cal.4th 795, 831.) The prosecution presented evidence, independent of his statements that showed that appellant broke into the garage and vehicles and cut his finger. Feiner saw appellant reach through the broken window of the Jeep. Appellant fled on a bike with his backpack containing stolen items from the ransacked Ford Escape. After the police stopped appellant 30 to 45 minutes later, Feiner identified appellant in a field show up. Most damaging was the blood in the vehicles which matched appellant's blood. The DNA match was remarkable: one in 30 quadrillion (three followed by 16 zeroes). The evidence of guilt was overwhelming. His inculpatory statements were merely incidental and were only used to impeach appellant. Any alleged error was harmless beyond a reasonable doubt. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 60.)

### Prosecutorial Misconduct

Appellant argues that the prosecution committed prejudicial misconduct in using his statements for impeachment purposes. During the trial, appellant stated there was an issue with a defense expert who was supposed to testify on the subject of confessions. The trial court asked whether Detective Lopez would testify about appellant's statements. The prosecution stated that it would not "be eliciting anything from [Detective Lopez] regarding the statement that was made by . . . [appellant]." Appellant was asked not to refer to his recorded *Miranda* statement because the People "are not seeking to have that statement admitted, . . ."

At the close of the prosecution's case in chief, appellant took the stand and testified that he had no recollection of what happened and could not even recall speaking to the police. Citing *People v. Quartermain* (1997) 16 Cal.4th 600, appellant claims that the prosecution engaged in misconduct when it used the *Miranda* statement for impeachment. In *Quartermain* defendant gave up his right to remain silent and testified after the prosecution promised that defendant's statement to the police would not be used in court. (*Id.*, at pp. 616-617.) Unlike *Quartermain,* no promise was made to induce appellant to testify. The prosecution said that Detective Lopez would not be asked about the *Miranda* interview, which is what happened. Thereafter, appellant decided to testify

7

and said he had no recollection of the events. Portions of the recorded *Miranda* interview were played for impeachment purposes only.

Appellant argues that it violated his due process rights and that it is misconduct for the prosecution to withhold damaging, material evidence until rebuttal. (See e.g., *People v. Hoyos* (2007) 41 Cal.4th 872, 923-924.) Appellant forfeited the issue by not objecting on those grounds. (*People v. Berryman* (1993) 6 Cal.4th 1048, 1072.) When a confession is elicited in violation of *Miranda,* the confession may be used for impeachment purposes where the defendant's testimony conflicts with his earlier statements. (*Harris v. New York* (1971) 401 U.S. 222, 225-226.) "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (*Ibid*.; see *People v. May* (1988) 44 Cal.3d 309, 319.)

That is the case here. Appellant insisted on testifying and had no due process right to a false aura of veracity. Appellant's statements were admissible to impeach his testimony that "I don't remember being in the garage" or how "I got into the building at all." Excerpts of appellant's recorded statement were properly received to show that appellant told the police a much different story. Appellant said that he "jimmied" his way into the apartment building with the screwdriver and broke into the vehicles, cutting himself while doing so.

Citing *People v. Sam* (1969) 71 Cal.2d 194, appellant argues that a prior inconsistent statement is not admissible if the witness does not remember what he or she said on a prior occasion. Our courts do not apply the rule in a mechanical fashion. When a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied. (*People v. Green* (1971) 3 Cal.3d 981, 988.) "As long as there is a reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful, admission of [the witness's] prior statements is proper. [Citation.]" (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220; see *People v. Ervin* (2000) 22 Cal.4th 48, 84-85.) A prior inconsistent statement is admissible where the witness professes to have no recollection of the underlying events or of even having made

8

the statements. (*People v. O'Quinn* (1980) 109 Cal.App.3d 219, 226.) The jury was so instructed: "If you disbelieve a witness' testimony that he or she no longer remembers a certain event, that testimony is inconsistent with a prior statement or statements by him or her describing that event." (CALJIC 2.13.)

In any event, we conclude that the use of appellant's statements for impeachment purposes was harmless in light of the eye witness identification, the physical evidence, and the DNA test results. (*Arizona v. Fulminante*, *supra*, 499 U.S. at p. 310; *People v. Thomas* (2011) 51 Cal.4th 449, 498.)

*Burglary "Person Present" Finding*

Appellant argues that the evidence does not support the special finding that another person was in the "residence" when the burglary was committed. Section 667.5 provides that the trial court may enhance the sentence where the offense is a violent felony as specified in 667.5, subdivision (c). Subdivision (c)(21) defines violent felony to mean "[a]ny burglary of the first degree . . . wherein it is charged and proved that another person, other than an accomplice, *was present in the residence during the commission of the burglary*." (Italics added.)

Appellant concedes the apartment manager was present when the vehicles were broken into but argues that an underground garage is not a "residence" within the meaning of section 667.5, subdivision (c)(21). Appellant's reliance on *People v. Singleton* (2007) 155 Cal.App.4th 1332 is misplaced. There, the defendant burglarized an apartment while the victim was outside the apartment in an exterior common area. (*Id.*, at p. 1338.) The court held that the evidence did not support the person-present finding. "Section 667.5, subdivision (c)(21) is plain on its face, and it requires a person, other than an accomplice, be '*present in the residence* during the commission of the burglary.' (Italics added) . . . . Certainly, it would not comport with the ordinary and plain usage to consider someone standing outside, around the corner, and down the hall from an apartment to be present in that apartment." (*Id.*, at pp. 1337-1338.)

Here the apartment units and the secured underground garage shared a common roof and were an integrated part of the apartment complex. "[A] structure is

9

part of an . . . dwelling . . . 'functionally interconnected with and immediately contiguous to other portions of the house.'" (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1107.) In *People v. Harris* (2014) 224 Cal.App.4th 86, the victims were in their house when defendant burglarized an attached garage that was converted into a guestroom. The Court of Appeal held that defendant's entry into a garage supported the "person-present" finding because the garage was physically attached to the main residence and shared the same roof. (*Id.*, at pp. 90-91.)

The same analysis applies here. It is uncontroverted that the secured garage was an integrated part of the apartment complex and shared the same roof. Feiner caught appellant "red-handed" in the garage and confronted him before appellant fled with the stolen property. The burglary qualifies as a violent felony due to the increased risk of harm to Feiner who was actually present during the commission of the burglary. "The risks arising from burglary are greater when a resident is present, as here, justifying the additional sanctions found in section 667.5, subdivision (c)(21)." (*Id.*, at p. 91.)

*Special Instruction on "Person Present" Finding*

Appellant asserts that the special instruction on the person-present finding is defective because it does not require the jury to find that the garage is part of a residence or an inhabited dwelling.[4] But that element is set forth in the burglary instruction which states that an apartment complex garage is "part of an inhabited dwelling if it is functionally interconnected with and immediately contiguous to other portions of the dwelling house. [¶] 'Functionally interconnected' means used in related or complementary ways. 'Contiguous' means adjacent, adjoining, and in actual close

_____

[4] The jury was instructed: "It is alleged in Count One that at the time of the offense, a person or persons were present at or in the apartment complex, residence/structure. [¶] If you find the defendant guilty of burglary, and you find that the burglary was of the first degree you must determine if a person or persons was/were present at the time of the commission of the offense. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true you must find it to be not true. [¶] Include a special finding on that question in your verdict, using a form that will be supplied for that purpose."

10

contact. It is not necessary that there be interconnecting doors." (CALJIC 14.52.) This is a correct statement of the law. (*People v. Fox* (1997) 58 Cal.App.4th 1041, 1047; *People v. Moreno* (1984) 158 Cal.App.3d 109, 112.)

Appellant did not object to the "person present" instruction or ask for an amplifying instruction, thereby waiving the alleged error. Waiver aside, the alleged instructional error was harmless by any standard of review. By its terms, the person-present instruction only applied if the jury returned a guilty verdict on count 1 for first degree burglary, which required the jury to find that the subterranean garage was part of an inhabited dwelling. Any failure to instruct on this allegation is harmless where the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. (*People v. Flood* (1998) 18 Cal.4th 470, 484; *People v. Stewart* (1976) 16 Cal.3d 133, 141.)

*Conclusion*

Appellant makes no showing that the purported errors, whether considered individually or collectively, deprived him of a fair trial. He had a fair trial. The case was "fact driven" and the uncontested facts point, unerringly, to guilt.

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.


11

Norm Shapiro, Judge

Superior Court County of Los Angeles

_____

David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Eric J. Kohm, Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.