Filed 12/22/25  P. v. Ackerman CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN EITAN ACKERMAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B336242<br>(Super. Ct. No. BA480314)<br>(Los Angeles County) |

Benjamin Eitan Ackerman appeals after a jury convicted him of three counts of first degree residential burglary (Pen. Code, § 459)[1] with person-present allegations (§ 667.5, subd. (c)(21)).  He contends the trial court erred in:  (1) admitting uncharged and pleaded-to burglaries, as well as evidence of numerous unspecified other crimes; (2) instructing as it did on the evidence of uncharged offenses or acts and person-present allegations; and (3) failing to order or review a presentence

---

[1] Undesignated statutory references are to the Penal Code.

probation report before sentencing. He also asserts cumulative error and a due process violation. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In a third amended information, the prosecution charged appellant and Jason Yaselli with conspiracy to commit money laundering (§§ 182, subd. (a)(1), 186.10, subd. (a); one count), first degree residential burglary with a person other than an accomplice present (§§ 459, 667.5, subd. (c)(21); three counts), first degree residential burglary (§ 459; 11 counts), and money laundering (§ 186.10, subd. (a); 28 counts).

Yaselli entered into a cooperation agreement under which he would receive probation and testify at appellant's trial. Appellant entered an open plea to all counts except the three residential burglaries with person-present allegations (counts 3-5). He also admitted the white collar enhancement allegation (§ 186.11, subd. (a)(2)).

The three remaining burglaries proceeded to jury trial. As to all counts, the jury found appellant guilty and found true the person-present allegations. The court sentenced him to a total term of 31 years, 8 months in prison.

*Linnea Stalberg Burglary on Ridpath Drive (Count 3)*

Linnea Stalberg lived with her family at a home on Ridpath Drive. Stalberg's real estate agent, Linda Ferrari, held a broker's open house on November 29, 2016. The name "Eitane" or "Eitone" appeared on the sign-in sheet for that day. Appellant's middle name is "Eitan." That day, appellant texted Yaselli: "I've got Sunday set up for at least 5k . . . ." and "Chanel. Easy out via yard. Will explain after I'm successful :)"

On Sunday, December 4, 2016, Ferrari held a public open house. The name "Eiton" appeared on the sign-in sheet for that day. Ferrari and her colleague would have been inside for the

2

entire open house, which went until 4:20 p.m. or 4:30 p.m. Stalberg testified she and her family returned around 4:30 p.m. or 4:45 p.m. Stalberg believed Ferrari "was out front."

Around 7:00 p.m., Stalberg noticed several of her Chanel purses, worth approximately $20,000, were missing. She later determined a Louis Vuitton duffel bag and a Givenchy purse were missing. One of the Chanel purses was recovered from appellant's storage unit.

A crime analyst for the sheriff's department testified appellant's phone was in the area of his own residence from 1:52 p.m. to 2:10 p.m. on December 4. From 2:11 p.m. to 3:56 p.m., his phone did not connect to any cell towers. Between 3:57 p.m. and 4:31 p.m., the phone connected to a tower near Stalberg's home. At 4:18 p.m., appellant texted Yaselli: "Call u in 15." Appellant had a 12 minute, 20 second phone call with Yaselli beginning at 4:31 p.m. At the end of that call, appellant's phone was near his own residence.

Yaselli testified that immediately after the burglary, appellant called and said he "managed to get out with" purses and "evaded being seen."

*Shaun Phillips Burglary on Burton Way (Count 4)*

Shaun Phillips owned a condominium on Burton Way in Beverly Hills. His second floor unit was accessible to the public through an elevator. Phillips's real estate agent, Chris Jacobs, held an open house on March 26, 2017, from 2:00 p.m. to 5:00 p.m.

At 3:21 p.m., surveillance video shows appellant walking up to the front door of the building. He then tries to "jimmy open" the door with a credit card. At 3:35 p.m., Jacobs lets four people, including appellant, into the building's lobby. Jacobs then brings those people onto the elevator. At 3:45 p.m., three of

3

those four people emerge from the elevator into the lobby and walk toward the exit. At 3:49 p.m., appellant exits the elevator. The pocket of his hooded sweatshirt was bulging. Appellant then leaves the building.

Two days later, Phillips realized some property was missing, including rings and watches. The total value of the property taken was about $350,000. Law enforcement recovered one of the rings, one of the watches, and Phillips's cufflinks at appellant's apartment.

In September 2017, appellant texted Yaselli that he saw Phillips wearing a Cartier watch while appellant was wearing a watch he stole from Phillips.

*Scott Webb Burglary on Rodgerton Drive (Count 5)*

In April 2017, Scott Webb listed for sale his home on Rodgerton Drive. Kate Blackwood, Webb's real estate agent, held open houses on Tuesdays and Sundays. Blackwood stayed in the home for the entirety of these open houses.

Two undated sign-in sheets included the name "Eitan." Blackwood recalled that appellant came to the residence on two days. On both days, he had a backpack. The second day, Blackwood did not see appellant enter the house. Appellant left the backpack with Blackwood. "It looked kind of square, like it had been forced closed, and it was full."

On Wednesday, May 31, 2017, appellant texted Yaselli he had "a mark for Sunday" and that "it involves a safe." On Sunday, June 4, 2017, appellant texted he obtained a Nikon camera and a safe containing passports, documents, watch boxes, $5,000, and two guns. He added: "Agent was upstairs. I put it in a duffel bag."

Webb did not realize the safe was missing until June 16, 2017, and he originally believed it was taken that day. Law

enforcement recovered from appellant's home several items taken from Webb's home.

*Other Acts Evidence*

The court admitted six pleaded-to and three uncharged burglaries under Evidence Code section 1101, subdivision (b). Each burglary was committed either during or relatively close in time to an open house. For the three uncharged burglaries, appellant told Yaselli there was a person present. None of the six pleaded-to burglaries included person-present allegations. Evidence admitted to prove the nine burglaries included victim testimony, text messages, sign-in sheets, and photographs.

DISCUSSION

*Other Acts Evidence*

Appellant contends "[t]he court erred in admitting evidence of the six pled-to burglaries on top of the three uncharged burglaries." (Bold omitted.) We disagree.

Evidence Code section 1101 "limits the admissibility of so-called 'propensity' or 'disposition' evidence offered to prove a person's conduct on a particular occasion." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822-823.) This rule, however, does not prohibit admission of crimes or other acts to prove some other fact, such as intent or common plan. (Evid. Code, § 1101, subd. (b).)

"'The least degree of similarity . . . is required in order to prove intent.' [Citation.] For this purpose, 'the uncharged misconduct must be sufficiently similar to support the inference that the defendant "probably harbor[ed] the same intent in each instance."'" (*People v. Chhoun* (2021) 11 Cal.5th 1, 25 (*Chhoun*).)

"A greater degree of similarity is required in order to prove the existence of a common design or plan." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "'To establish the existence of a

common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual'; rather it 'need only exist to support the inference that the defendant employed that plan in committing the charged offense.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 712.)

"Even if evidence of the uncharged conduct is sufficiently similar to the charged crimes to be relevant for a nonpropensity purpose, the trial court must next determine whether the evidence's probative value is 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*Chhoun*, *supra*, 11 Cal.5th at p. 26; Evid. Code, § 352.)

We review admission of evidence for abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.) We will not disturb the trial court's ruling "'"unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice."'" (*People v. Mataele* (2022) 13 Cal.5th 372, 414.)

Evidence of the nine burglaries was admissible to show intent. The similarity to the charged offenses certainly supported the inference that appellant harbored the same intent to commit theft. The existence of other evidence of intent did not eliminate the nine burglaries' probative value. "[I]t is the prosecutor's burden to establish every element of the crime, regardless of whether the defendant offers a defense or not." (*People v. Erskine* (2019) 7 Cal.5th 279, 296-297.) The three uncharged offenses were particularly relevant because they suggested appellant intended to commit theft even when another person was present.

Evidence of the uncharged and pleaded-to burglaries was also admissible to prove a common plan. The common plan "standard can be met despite the existence of some factual differences between or among" the offenses. (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1225.) Here, the evidence indicates appellant committed the charged offenses and the nine burglaries "pursuant to a common design or plan" to take valuables from residences with open houses. (*People v. Edwards, supra,* 57 Cal.4th at p. 712.) That all the burglaries "were not committed in exactly the same way"—e.g., only some involved a person present—did not preclude admission of the nine burglaries on a common plan theory. (*People v. Kraft* (2000) 23 Cal.4th 978, 1032; see also *Alcala,* at p. 1225, fn. omitted [noting *Kraft* held the "evidence underlying . . . 16 charged murders 'generally' would have been admissible at separate trials" where "'most'" of those 16 murders "shared substantial similarities"].)

Regarding Evidence Code section 352, the evidence of the nine other burglaries was "'no more inflammatory than the testimony concerning the charged offenses.'" (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 330; see also *People v. Spector* (2011) 194 Cal.App.4th 1335, 1380 [court did not abuse its discretion by admitting "seven separate incidents" of armed assault].) Moreover, none of the six pleaded-to burglaries included a person-present allegation, so the jury did not receive the misleading impression appellant committed burglaries only with a person present. By contrast, excluding evidence that another person was present for the three uncharged burglaries would have created a misleading impression that no one was present. Given the "substantial probative value with respect to the issues of intent and a common plan," the court did not abuse its discretion. (*People v. Foster* (2010) 50 Cal.4th 1301, 1331.)

Appellant also contends the "trial court erred in admitting extensive evidence of numerous unspecified other crimes." (Bold omitted.) He points, for instance, to text messages apparently referencing other crimes and photographs of items not obtained through either the charged offenses or the nine burglaries. Assuming this contention has not been forfeited, we conclude admission of such evidence does not rise to the level of a due process violation rendering appellant's trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 439.) Any error in admitting this evidence was harmless under state law because it is not reasonably probable a more favorable outcome would have been reached absent such error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

Appellant confines his prejudice argument to the person-present allegations for the three charged burglaries. However, even as to those allegations, the evidence was overwhelming. The jury would have reached the same verdicts even if the "unspecified other crimes" evidence had been excluded. (Bold omitted.)

Regarding the Stalberg burglary, appellant signed in with his middle name (or some variation on it), and the realtor testified she would have been in the home at that time. Appellant offers a scenario in which he went to the Stalberg residence before 1:52 p.m. and unlocked doors, then went home, and then returned at 3:57 p.m. before taking the items. Apart from the inherent implausibility of this sequence of events, the evidence does not support it. The cell phone evidence does not suggest appellant went to the open house in the 1:00 p.m. hour, and appellant's middle name (or some variation on it) appears towards the end of the day's sign-in sheets, not the beginning.

Appellant had the requisite intent when he entered the home and signed in with the realtor present.

Regarding the Phillips burglary, surveillance video showed the realtor letting appellant into the lobby.  As we explain further below, given appellant's clear intent to commit theft when he entered, this circumstance satisfies the person-present allegation.

Finally, the evidence demonstrates realtor Kate Blackwood was present for the Webb burglary.  Blackwood stayed in the home for the entirety of the open house.  She saw appellant with a backpack that "looked kind of square," consistent with Webb's safe.  In a text message, appellant indicated he put the safe in a duffel bag while the agent was upstairs.  Minor inconsistencies in these accounts and credibility issues pale in comparison to this powerful evidence.

*Claimed Instructional Errors*

Appellant contends the jury instructions for the Phillips burglary erroneously allowed the jury to find the person-present allegation true even if appellant was present with another person only in the lobby.  The court did not err.

The lobby and Phillips's unit were both an integrated part of the condominium building.  (See *People v. Debouver* (2016) 1 Cal.App.5th 972, 981 (*Debouver*) [apartment complex's secured underground garage part of "residence" for purposes of person-present allegation].)  The lobby constituted a "residence" for purposes of the person-present allegation.  (§ 667.5, subd. (c)(21).)  *People v. Singleton* (2007) 155 Cal.App.4th 1332, is factually distinguishable.  "There, the defendant burglarized an apartment while the victim was outside the apartment in an exterior common area." (*Debouver*, at p. 981.)

Appellant argues *Debouver* reached the wrong result.  We disagree.  Even if "residence" and "inhabited dwelling" are not

9

identical terms, they can still overlap.  Here, the lobby qualifies as both a residence and an inhabited dwelling.

Appellant challenges the jury instruction regarding the evidence of uncharged offenses or acts.[2]  To the extent any error exists, it was harmless.  When factoring in the overwhelming evidence as outlined above, there is no reasonable probability of a more favorable outcome absent any error, and any error is harmless beyond a reasonable doubt.  (*Watson, supra,* 46 Cal.2d 818; *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] (*Chapman*).)

*Probation Report*

Appellant argues the trial court erred by not ordering or reviewing a presentence probation report prior to sentencing.  We conclude the error was harmless.

A trial court's failure to order and review a probation report is subject to harmless error review under *Watson.*  (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 182.)  Here, the court knew appellant pleaded no contest to most counts, as defense counsel highlighted this fact.  The court heard from appellant and his

---

[2] Modified CALCRIM No. 375 provided, in part, as follows: "If you decide that the defendant committed the uncharged offenses or acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether:
  A. The defendant acted with the intent to commit the charged residential burglaries in this case;
  B. The defendant knew people were present inside the residence(s) when he allegedly acted in this case;
  C. The defendant had a plan or scheme to commit the offenses and allegations alleged in this case;
  D. The defendant committed the charged burglaries while a person other than the defendant or an accomplice was present inside the residence."

father, and it also received supporting letters from friends and family. In explaining the sentence, the court noted "overwhelming" evidence demonstrated appellant "is a sophisticated, serial burglar," appellant's demeanor at sentencing, and the aggravating factors. In light of the court's thorough assessment, it is not reasonably probable appellant would have received a more favorable outcome had the court reviewed a probation report.

*Cumulative Error and Due Process*

We reject appellant's cumulative error and due process arguments. To the extent errors occurred, even when considered cumulatively, no prejudice exists under either the *Watson* or *Chapman* standards. (Cf. *People v. Davis* (2009) 46 Cal.4th 539, 627.) Appellant received due process and a fair trial. (Cf. *People v. Cuccia* (2002) 97 Cal.App.4th 785, 795.)

We have reviewed the remainder of appellant's arguments and conclude he has not shown any grounds for relief.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


CODY, J.

We concur:


YEGAN, Acting P. J.


BALTODANO, J.

11

Mark S. Arnold, Judge
Superior Court County of Los Angeles

_____

Jeffrey Manning-Cartwright, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.